In the Matter of Wilmot E. SULZER and Jacqueline Sulzer, a/k/a Jacqueline A. Sulzer, Defendants.

Bankruptcy No. 80 B 20024.
Adv. No. 2005.

United States Bankruptcy Court,
S. D. New York.

Feb. 11, 1980.

Nancy P. Pichard, Scarsdale, N. Y., for Manufacturers Hanover Trust Co.

Netter, Dowd & Alfieri, New York City, for debtors.

## DECISION ON COMPLAINT FOR RELIEF FROM AUTOMATIC STAY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This is an adversary proceeding commenced by a mortgagee in a case under Chapter 11 of the Bankruptcy Code for relief from the automatic stay imposed under Code § 362(a). The debtors are husband and wife who filed a voluntary joint petition for relief under Chapter 11 of the Code on January 17, 1980. Unless otherwise indicated, the husband will be referred to as the debtor. The mortgagee, Manufacturers Hanover Trust Company, holds a first mortgage on the debtor's home in the face amount of $64,000, dated February 7,

1973, which is in default and with respect to which the mortgagee has obtained a state court judgment of foreclosure and sale in the amount of $66,929.12, plus costs and allowances, as of November 8, 1979. The foreclosure sale was scheduled for January 21, 1980.

On January 22, 1980, the mortgagee filed a summons and complaint with this court requesting relief from the automatic stay on the ground that continuation of the stay will impair the mortgagee's security and that the debtors do not have any equity in the premises in question.

The matter came on for a preliminary hearing on January 29, 1980, which this court consolidated with the final hearing, as authorized under Code § 362(e), and continued on February 6th through 8th, 1980.

### FINDINGS OF FACT

1. The debtor is a psychoanalyst with an office in New York City where he treats patients with emotional disorders through talking. He also maintains an office in his home for his professional services, and more recently he has tended to use the office in his home for his practice more than his New York City office, especially since he owes several months rent for the New York City office and the landlord is threatening to evict him.

2. A witness offered by the debtor as an expert real estate appraiser valued the property in question at $300,000, based upon the following description contained in his report: [Exhibit # E]

This is a contemporary house of individual design containing 15 rooms, 6 bedrooms, 4 bathrooms, 2 lavatories. There are many special features. There is a main house and a guest wing. The children's 4 bedrooms and central playroom are located on the lower level. The living and reception rooms are on the second level and the master bedroom suite is on the third level. The guest wing has 2 rooms and one bathroom.

The site offers a special view of Mianus River and the hills on the other side.

Greenwich Road is a busy street. To overcome any drawback this might have, the architect designed the house so that it faces the river. A screen of fast growing evergreens at inexpensive cost should be planted along the road frontage.

There are no windows on the street side of the house. The river is wide forming a lake on half of the subject property. It is good for swimming without chlorine and is a trout stream.

Many mirrored walls and special plexiglass shelves and fittings. Plexiglass wall coverings in children's rooms.

Wide pine diagonal flooring finished with polyurethane.

Built-in glass screen for 2 fireplaces. Vermont stone hearth.

Separate thermostat for each room or living area, controls heat and cooling system. Heating is by hot water. Cooling is by chilled water not refrigerated air. This is a sophisticated system.

Wet bars in living room. Bar sink, a refrigerator in guest suite. Spot lighting in many places.

Built-in stereo system with built-in speakers in all rooms.

Fitted closets in dining room and master bedroom.

Large deck with bar-b-que. Fir decking treated with Cuprinol for use of maintenance and wood preservation.

Birch hardwood staircase and handrail.

4 skylights, one of which is vented to release hot summer air.

Master motorized television direction finder antenna. Television outlets in all parts of the house.

Built-in vacuum cleaner system.

A.D.T. fire and burglar alarm.

Exterior spot lights on swimming area. Outside electrical outlets.

Bridge gallery to guest wing office needs sheetrock and flooring, estimated cost $350.

Family room with fireplace, living room with fireplace. Fireplace in children's living room.

2 sinks in one children's bathroom.

Supplementary quick electric heat in all bathrooms. Built-in hair dryer in children's bathroom.

Thermopane windows throughout.

The house is in good marketable condition, showing only ordinary signs of wear and tear. There are no observable structural defects.

3. One of the real estate appraisers offered by the mortgagee valued the property at $178,000, based on $45,000 for the land and $133,000 for the improvements. This expert valued the property at a cost new as $237,000, but made various adjustments for lack of garage, driveway, required repairs, lack of landscaping and the fact that the home amounts to an overimprovement for the site in question. [Exhibit # 11]

4. A second real estate appraiser for the mortgagee valued the property at $177,000, including $40,000 for the land and $137,000 for improvements. This expert recommended an asking price of $195,000, "which would permit sufficient leverage in securing estimated market value of $177,000." [Exhibit # 12] The local assessment, which is based on the full value of the property, is $143,000.

5. Accepting the debtor's figures as the current amounts due on the five mortgages of record against the debtor's property, they are listed as follows:

| | |
|---|---|
| First mortgage held by plaintiff — | $68,825.45 |
| Second mortgage of Computer Land Corp. | 56,330.18 |
| Third mortgage of H. U. D. | 9,204.06 |
| Fourth mortgage of L. Kellner & Co. | 34,716.12 |
| Fifth mortgage of Marion Levy | 27,572.52 |
| Total | $196,648.33 |

In addition, there must be included the interest of $844.61 claimed by the Department of Housing and Urban Development on their $9240.06 mortgage, at the daily rate of $1.52. Therefore, the total mortgage indebtedness should be $197,492.94.

6. The debtor disputes the validity of the Second, Fourth and Fifth mortgages on the ground of usury. The debtor has asserted usury as a defense to the second mortgagee's foreclosure action that was pending in state court when the debtors filed for relief under the Bankruptcy Code. However, these mortgages have not as of

this date been determined to be invalid and therefore continue of record against the property in question.

7. The mortgagee's title report [Exhibit # 10] lists seven judgments recorded as liens against the property. However, the judgment by a Marion Levy relates to her previously listed mortgage and will therefore be disregarded as duplicative of her secured claim. The other six judgment liens with interest, as computed by the debtor's counsel, are as follows:

| | |
|---|---|
| United States Trust Co. | $38,863.46 |
| Bank of Commerce | 2,397.68 |
| European American Bank | 5,928.62 |
| Bedford Chrysler-Plymouth Inc. | 2,050.18 |
| Bank of New York | 8,913.93 |
| Bankers Trust New York Corp. | 2,049.46 |
| Total | $60,203.33 |

8. The mortgagee's title report also reflects three federal tax liens in favor of Internal Revenue Service. There is also one New York State tax lien and one New York City tax lien, computed with interest and penalty interest as follows:

| | | |
|---|---|---|
| Internal Revenue Service 5/25/77 | – | $ 7,501.13 |
| Internal Revenue Service 9/19/78 | – | 14,289.61 |
| Internal Revenue Service 8/11/79 | – | 2,803.44 |
| N.Y.S. Tax Commission, 4/21/78 | – | 6,049.06 |
| NYC Finance Administration | – | 700.00 |
| Total | | $31,343.24 |

9. To recapitulate, the five mortgages of record in the total sum of $197,492.94, the six judgment liens aggregating $60,203.33, and the five tax liens amounting to $31,343.24, reflect a total secured indebtedness against the property in question of $289,040.51.

10. In addition, the title report indicates that the school taxes due January 1, 1980, in the sum of $1771.98 have not been paid. If this item becomes a lien, the total secured indebtedness will amount to $290,812.49.

11. The debtor has made no payments in reduction of the first mortgage for approximately one and one-half years, during which time this mortgagee has paid taxes and insurance on the premises and will have to continue to make these payments in the future in order to protect its interests. The real estate taxes are in excess of $6000 per year.

12. I find that the mortgagee's appraisers have been understandably conservative in their estimates of the value of the debtor's premises. It is true that their figures of $178,000 and $177,000 more closely resemble the full value assessment of $143,000, but they do not give enough weight to the unique pastoral setting adjacent to a nearby stream that should produce some intangible value. Indeed, the mortgagee's first appraiser more closely approached the true value of the premises with a cost new figure of $237,000. However, this appraiser regarded the overimprovement feature from a negative aspect, whereas the debtor's appraiser, as one would expect, treated this subject as a positive value. On the other hand, the debtor's appraiser was unduly optimistic, making insufficient allowance for the fact that nearby competitive homes are marketed for lower amounts. This point is noted in his report as follows:

"A large subdivision named Musket Ridge Estates on the opposite side of Greenwich Road is well underway. Fifty houses have been sold including contemporary and five are under construction in a range of $160,000." [Exhibit E]

Consideration must also be given to the current pervasive high cost of money and the fact that this produces a negative feature in the real estate market; that the debtor's house is admittedly of "individual design" which may not have universal market appeal; the lack of a garage and driveway and the need for more landscaping adjacent to the road for more privacy.

13. Based upon the facts and information presented by the real estate appraisers, I find that the estimated value of the premises in question is somewhere in the range from a minimum of $250,000 to a maximum of $275,000, provided that there exists someone with sufficient financing who might wish to buy the debtor's custom-built house under current market conditions.

14. It therefore follows that the secured indebtedness of approximately $290,000 recorded against the property in question exceeds its maximum value of $275,000. Ac-

cordingly, the debtor lacks any equity in excess of the $275,000 value.

15. There is no question that the availability of this house for office facilities is a positive feature in enabling the debtor to pursue his calling as a psychoanalyst. In recent years he has been able to see from 50% to 75% of his patients in his office at home. The remainder of his patients are seen in the debtor's New York City office. The New York City office is not as important in the debtor's future plans because he owes rent there for January and February 1980 and has been threatened with eviction. In the circumstances, the office in the debtor's home, where he has been able to reside rent-free without paying mortgages, taxes and insurance, is certainly more attractive than the New York City office. Manifestly, if the debtor could transfer all of his patients to his home office under these conditions, and if this court would continue to stay all five mortgagees from foreclosing, then an eviction of the debtor from his New York City office for non-payment of rent would not be too disruptive with respect to his practice or his status as a debtor in possession.

16. However idyllic a practice under such conditions may seem, this court cannot find that the debtor's office in his home is necessary to an effective reorganization under Chapter 11 of the Bankruptcy Code; perhaps convenient, but not necessary.

17. There is no proof that the debtor cannot function as a psychoanalyst in a rented office, either in New York City or in Westchester County. There is no evidence that there is anything unique or essential respecting the office in the debtor's home, other than convenience and that it is rent-free.

## DISCUSSION

The first mortgagee's request for relief from the automatic stay brings into question the grounds for authorizing such relief within the governing provisions of Code § 362(d). These grounds are stated alternatively; either for cause, as expressed in § 362(d)(1) or, if the debtor does not have an equity in the property in question and the property is not necessary to an effective reorganization, within the meaning of § 362(d)(2).

## CAUSE

■ Lack of adequate protection for the secured creditor's interest in the property in question is one cause for relief, but it is not the only cause. In the instant case, where the first mortgagee's claim approximates $67,000 against a residential property valued at not less than $177,000 and found by this court to be worth between $250,000 and $275,000, it is clear that the first mortgagee's cushion is sufficiently ample to conclude that it is adequately protected. However, cause for relief might also include lack of any interference with the pending reorganization case. See *House Report* No. 95–595, 95th Cong., 1st Sess. (1977) 343; *Senate Report* No. 95–989, 95th Cong., 2d Sess. (1978) 53, U.S.Code Cong. & Admin.News 1978, p. 5787. This is an issue on which the debtor, as the party opposing relief from the stay, has the burden of proof; the mortgagee has the burden of proof only on the issue of the debtor's equity in the property. Code § 362(g).

■ The debtor has not established that the lifting of the stay to permit the first mortgagee to realize upon its state court judgment of foreclosure will interfere with his voluntary petition for a reorganization under Chapter 11 of the Bankruptcy Code.

The debtor is a psychoanalyst who uses a wing in his 15 room house in Westchester County, New York, as an office for consulting with his patients. He also maintains an office in New York City for the same purpose. That he owes two month's rent for his New York office and has therefore transferred more than half of his practice to his office in his home, does not mean that he can only maintain his practice at home. This is not the type of business where the property sought to be foreclosed consists of material and equipment without which the debtor cannot do business. There is no proof that there is anything unique con-

cerning the debtor's office in his home or that it is essential to his practice.

The debtor originally consulted with most of his patients in his New York City office. The factor that makes his office at home more attractive than the New York City office is that he must pay rent for the latter office whereas the debtor resides in his home rent-free, without having paid mortgages, taxes, insurance and judgment lien creditors. If the patients must be seen in Westchester County rather than in New York City, the debtor could rent a convenient office in Westchester County. Apparently it is not the geography of the situation that is paramount, but the cost of office maintenance.

That the debtor may regard the requirement of having to bear the cost of maintaining an office for his practice as an interference with his financial plans does not mean that an action by a secured creditor that would deprive the debtor of this cost-free status unjustifiably interferes with the debtor's ability to practice his profession and fund a plan of reorganization. Accordingly, the debtor has failed to sustain his burden of proving that the stay should not be lifted for cause.

## DEBTOR'S LACK OF EQUITY AND THE PROPERTY IS NOT NECESSARY FOR AN EFFECTIVE REORGANIZATION

The alternative ground for lifting a stay, as expressed in Code § 362(g)(2) is that (a) the debtor does not have any equity in the property; *and* (b) the property is not necessary to an effective reorganization. The legislative purpose for this ground is directed toward real property mortgage foreclosures where the petition for relief was filed on the eve of the foreclosure. See 124 *Cong.Rec.* H 11,092–3 (Sept. 28, 1978); S 17,409 (Oct. 6, 1978). In the instant case, the petition was filed after the entry of the foreclosure judgment and on the eve of sale.

■ The elements of lack of equity and need for the property for an effective reorganization are stated in the conjunctive.

However, the mortgagee, as the party seeking relief from the stay, has the burden of proof on the issue of lack of equity. Code § 362(g)(1). The debtor has the burden of proof on all other issues, including that the property is necessary for an effective reorganization. Code § 362(g)(2).

■ In this case, this court has found that the secured claims against the property, totaling approximately $290,000, preclude the debtor from having any equity in the property valued at between $250,000 to $275,000, at most. Hence the mortgagee has sustained its burden of proving lack of equity.

The debtor on the other hand, has not demonstrated that the property is necessary for an effective reorganization. The debtor's office in his home, as contrasted with his office in New York City, is not directly instrumental to his relationship with his patients or the gross income derived from his practice. As this court previously noted, if the debtor's financial reorganization is dependent upon his maintaining a rent-free office, then this is not the type of luxury to which this court should subscribe within the context of debtor relief. The debtor may continue his practice in any convenient rentable office from which he may generate funds to implement a plan of reorganization. However, the mortgagee cannot, in good faith, be compelled to underwrite the debtor's desire to conduct his practice from his home.

A foreclosure of the first mortgage on this debtor's home would ordinarily have no bearing on the debtor's business reorganization, except for the fact that the debtor seeks to conduct his business from his home. The stay is not required because the home is necessary for an effective reorganization. The stay is desired in order to halt a foreclosure sale relating to the debtor's home. An effective reorganization is not dependent on the debtor remaining in possession of his home; his practice may be maintained from any convenient office, including his present office in New York City.

It should be noted that had the debtors filed a petition under Chapter 13 of the Code, the alternative test to be applied under Code § 362(d)(2) would only involve the debtor's equity in the property. The conjunctive requirement that the property "is not necessary to an effective reorganization" would not apply because Chapter 13 is not a business "reorganization" chapter; it involves an "Adjustment of Debts of an Individual with Regular Income". While Chapter 13 may include individual sole proprietors, a Chapter 13 debtor cannot modify the rights of mortgagees of his principal residence. Code § 1322(b)(2). Therefore, the Chapter 11 test that the property must be necessary to an effective reorganization contemplates that the property is used directly in connection with the debtor's business and not that an individual debtor uses his principal residence also as a place of business. In such case, only the lack of equity test under Code § 362(d)(2) will be the alternative to the test applicable under Code § 362(d)(1) for relief from the automatic stay for cause shown, including the lack of adequate protection.

### CONCLUSIONS OF LAW

1. The mortgagee is entitled to relief from the automatic stay for cause shown, as required under Code § 362(d)(1).

2. The mortgagee has established that the debtors do not have any equity in the property in question and the debtors have not satisfied their burden of proving that such property is necessary to an effective reorganization within the meaning of Code § 362(d)(2).

3. The automatic stay is hereby vacated as to the mortgagee's enforcement of its judgment of foreclosure and sale.

4. The affirmative defenses and counterclaim in the debtor's answer are dismissed.