**In the Matter of Frank A. VINCENT and Kitty A. Vincent, his wife, Debtors.**

**ST. PETERSBURG FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

**v.**

**Frank A. VINCENT and Kitty A. Vincent, his wife, Defendants.**

**Bankruptcy No. 80–889.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Dec. 29, 1980.

---

Wm. Fletcher Belcher, St. Petersburg, Fla., for St. Petersburg Federal Sav.

David W. Steen, Tampa, Fla., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT TO MODIFY STAY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an adversary proceeding commenced by a complaint filed by St. Petersburg Federal Savings & Loan Association (Savings & Loan) pursuant to Bankruptcy Rule 701. The Complaint seeks a relief from the automatic stay imposed by § 362(e) of the Bankruptcy Code. The underlying facts as appear from the record established at the Final Evidentiary Hearing can be briefly summarized as follows:

The Savings & Loan is the holder of a promissory note and mortgage dated March 10, 1978, executed by Frank A. Vincent and Kitty E. Vincent, the Debtors involved in this Chapter 11 business reorganization proceeding. The mortgage encumbers certain real property located in Pinellas County, Florida which is the residence of the Debtors. The record further reveals that the Debtors are in default and have not made any payments since May 9, 1979, have not paid the 1979 real estate taxes and have failed to maintain hazard, fire or flood insurance on the subject property.

On October 19, 1979, the Savings & Loan commenced a foreclosure proceeding in a Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida. On June 5, 1980, the Circuit Court entered a

final judgment in the foreclosure proceeding, which parenthetically, also involved as defendant, the holder of the second mortgage, Southern Discount Company (Southern Discount). The final judgment entered by the Circuit Court determined that the Debtors are indebted to the Savings & Loan in the total amount of $81,642.61 and to Southern Discount in the amount of $10,517.42; and that both the Savings & Loan and Southern Discount hold a valid lien, securing said indebtednesses. The final judgment ordered the property to be sold at a public sale. The sale was scheduled for July 1, 1980. On June 24, 1980, or after the entry of the final judgment but before the sale, the Debtors filed their joint petition for relief under Chapter 11 of the Bankruptcy Code, therefore, by virtue of the automatic stay imposed by § 362 of the Bankruptcy Code, neither the Savings & Loan nor Southern Discount was able to proceed and complete the foreclosure sale.

It is conceded, and it is apparent from the record, that there is a definite equity in the subject property. It is also clear and without dispute that this property was, and still is, at this time, the residence of these debtors and claimed exempt as their homestead under Art. X, § 4 of the Florida Constitution. It further appears that Mr. Vincent, who is an insurance agent, maintains an office in a property which he inherited from his mother. This property has an approximate value of $69,000, on which there are no contractual encumbrances, but which property may be subject to a possible tax claim by the IRS. The tax liability, if any, is yet to be resolved, pending the conclusion of an audit.

The total scheduled unsecured obligations of these Debtors is in the neighborhood of $9,000 and the plan yet to be filed will supposedly propose a full satisfaction of these obligations out of the proceeds to be obtained from the sale of their residence. Although the Debtors have been aware for a year and a half that they will most likely lose their residence and also their equity in the same, the property was not listed for sale until November 24, 1980, although counsel for the Debtors intimated that the property was listed earlier in the spring of 1980 and the Debtors received an offer to purchase this property for $120,000, which offer they refused.

It is the contention of the Debtors that inasmuch as the Savings & Loan has failed to establish lack of equity in the subject property, it has failed to carry the burden placed on a secured creditor by § 362(d) of the Bankruptcy Code. In addition, the Debtors contend that the preservation of their equity in this property is indispensable to their efforts to obtain rehabilitation under Chapter 11 of the Code, therefore, they are entitled to preserve the protection of the automatic stay until they are able to liquidate the subject property.

In opposing the extension of the automatic stay, the Savings & Loan contends that the Debtor, who is an insurance agent, conducts his business out of his business premises and the residence has not been used for the conduct of his business. Thus, inasmuch as this is a business reorganization proceeding and not a proceeding under Chapter 13 by an individual who seeks a readjustment of his debts, the loss of the residence would have no direct impairment on the Debtor's business. In support of its position, the Savings & Loan cites *In re Sulzer*, 2 B.R. 630 (Bkrtcy.S.D.N.Y.1980). In *Sulzer, supra* the debtor, who was a psychoanalyst, sought to preserve the automatic stay in order to prevent the loss of his residence through foreclosure. The Debtor maintained his office in his home and claimed that foreclosure would inhibit or prevent an effective Chapter 11 reorganization. The Court in *Sulzer, supra* rejected the contention of the Debtor that it would be economically more advantageous for him to carry on his practice in his residence than to pay rent and held that there was insufficient grounds to prevent the secured party from foreclosing its mortgage because the loss of the residential property would not interfere with the debtor's ability to either practice his profession or to fund the plan. Although *Sulzer, supra* is somewhat analogous to the facts of the case at bar, this Court for reasons to be stated below finds

that authority inapposite to the circumstances of this case.

The relief sought by the Savings & Loan is based on § 362(d) which sets for the grounds for relief from the automatic stay. These grounds are stated in the alternative. The stay may be lifted or vacated either for "cause" under § 362(d)(1) including lack of adequate protection, or under § 362(d)(2)(A), (B) if the Debtor does not have any equity in the property and the property in question is not necessary to effectuate a reorganization. The lack of adequate protection for the interest of a secured creditor is one cause for relief under § 362(d)(1).

Section 361 of the Bankruptcy Code provides several alternative methods of adequately protecting a secured creditor and § 361(3) provides that if the secured party realizes the "indubitable equivalent" of its interest in the collateral, it is adequately protected. There are numerous decisions which have construed the meaning of the term indubitable equivalent, particularly with respect to the scope and reach of sub. (3) of § 361 of the Bankruptcy Code. Those decisions have held that an equity cushion in and of itself is legally sufficient to satisfy the adequate protection requirement of § 361(3) and would prevent the lifting of the automatic stay under § 362. Thus, in the case of *In re San Clemente Estates*, 5 B.R. 605, 2 CBC 2d 1003 (Bkrtcy.S.D.Cal. 1980) the court held that a secured creditor's interest in property may be adequately protected by the value of the collateral itself even though that method of protection is not specifically provided for by the Code; see also, *In re Rogers Development Corp.*, 2 B.R. 679, 5 B.C.D. at 1394 (Bkrtcy.E.D.Va. 1980); *In re Blazon Flexible Flyer, Inc.*, 407 F.Supp. 861 (N.D.Ohio 1976); *In re McAloon*, 1 B.R. 766, 5 B.C.D. 1207 (Bkrtcy.E.D. Pa.1980); *In re Shockley Forest Industries*, 3 C.C.H., B.L.Rep. ¶ 67,683 at 78,202 (N.D. Ga.1980).

■ Thus, even assuming that § 362(d)(1) is the applicable controlling provision, the secured party cannot prevail and have the stay lifted for "cause" because under the cases cited it is adequately protected in light of the undisputed fact that the Debtors have ample equity in the subject property.

■ This Court is, however, satisfied that § 362(d)(2) as the alternative ground for obtaining adequate protection is controlling in cases where, as here, the secured party's interest is in real property and the automatic stay is sought to be lifted for the purpose of foreclosing the mortgage. This conclusion is both indicated and supported by the Code's legislative history. See 124 Cong. Rec.H. 11,092–3 (Sept. 28, 1978); S. 17,409 (Oct. 6, 1978).

■ Under § 362(d)(2), before the stay can be lifted, there must appear both a lack of equity in the Debtor's property and also a showing that the property is not necessary for an effective reorganization. Pursuant to § 362(g) of the Code, the burden to show lack of equity in the property is on the party seeking relief from stay while the Debtor has the burden with respect to the remaining issues, i. e. the property is necessary to an effective reorganization. *In re Anchorage Boat Sales*, 4 B.R. 635 (Bkrtcy.E. D.N.Y.1980).

■ Considering this record, this Court is satisfied that the plaintiff has not satisfied the burden of establishing lack of debtor equity, a point not disputed by the parties and in addition, the Debtor has carried its burden to show that the subject property is necessary for an effective reorganization.

Since the enactment of the Bankruptcy Reform Act of 1898 by Pub.L. 95–595, there seems to be some confusion between the purpose of Chapters 11 and 13 of the Bankruptcy Code, especially if the latter involves an individual engaged in business. This confusion is understandable and can easily be explained by merely pointing out the vast difference between need of a business for the type of relief afforded by Chapter 11 and the relief afforded by Chapter 13 of the Code. The problem is further complicated by the fact that the automatic stay provisions together with its limiting provisions which were designed to protect the

parties affected by the stay, apply with some exception to both Chapters even though the two Chapters were designed to achieve vastly different purposes. Although, Chapter 11 was designed to effectuate a total reorganization of a large business and to that extent, is simply a modernized and updated version of the pre–Code Chapter X corporate reorganization proceeding, it also expressly authorizes "liquidation" plans. Thus, unlike a business reorganization under Chapter X of the Bankruptcy Act of 1898, the Bankruptcy Code now expressly permits a plan under Chapter 11 which contemplates a sale of all, or substantially all, of the property of the estate, thus a liquidating plan at the outset. § 1123(a)(5)(D), 11 U.S.C. § 1123(a)(5)(D); H.Rep. 95–595, 95th Cong. 1st Sess. at 406 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963; S.Rep.95–989, 95th Cong. 2d Sess. at 118, U.S.Code Cong. & Admin.News 1978, p. 5787 (1978).

The plan proposed by these debtors, contemplates the sale of the subject real property and using the equity realized from the sale to fully satisfy the holders of unsecured claims after paying off in full the first and second mortgagees.

The fact that these Debtors have an interest in other property which is presently involved in a probate proceeding is without great significance, especially in light of the fact that the property is charged with a trust interest and may ultimately be assessed with an additional tax claim by the IRS. Thus, whether or not funds could be realized from the sale of the property tied-up in probate is without significance because it is doubtful that the proceeds would be sufficient to pay the unsecured creditors and certainly would not be sufficient to pay off the secured creditors.

In light of the foregoing, this Court is satisfied that under § 362(d)(2) these debtors did establish that they have an adequate equity cushion in the subject property which provides adequate protection to the secured creditor. In addition, these Debtors have shown that the property in question is necessary to effectuate a Chapter 11 liquidation plan inasmuch as other potential assets of these Debtors, not subject to the jurisdiction of this Court at present, could not be utilized to fund the proposed plan.

Having concluded that the Savings & Loan is not entitled to relief from stay at present, this leaves for consideration the question of how long this creditor can be held at bay and under what terms and conditions should the automatic stay be extended.

In light of the past history of this case, the Debtors' delay and apparent unwillingness to undertake any meaningful steps to liquidate this asset, the Court is satisfied that it is equitable to set a firm deadline for the liquidation of this asset. Accordingly, unless the property is sold within 90 days from December 22, 1980, the Savings and Loan should be permitted to complete its foreclosure action and the automatic stay shall be lifted upon ex parte application.

A separate final judgment will be entered in accordance with the foregoing.