**In re James Forest CROUSE and Karin Agnes Crouse, Debtors.**

**FIRST FEDERAL SAVINGS OF AUSTIN, Plaintiff,**

**v.**

**James Forest CROUSE and Karin Agnes Crouse, Defendants.**

**In re William C. BUSCHARDT and Shirley Buschardt, Debtors.**

**FIRST FEDERAL SAVINGS OF AUSTIN, Plaintiff,**

**v.**

**William C. BUSCHARDT and Shirley Buschardt, Defendants.**

**Bankruptcy Nos. 80–02214–HB, 80–02455–HB.**
**Adv. Nos. 81–0066–HP, 81–0065–HP.**

United States Bankruptcy Court,
S. D. Texas,
Houston Division.

March 4, 1981.

James A. Dunn, Winters, Deaton, Briggs & Britton, Houston, Tex., for First Federal Savings of Austin, plaintiff.

Don Knabeschuh, Ford & Ventura, Houston, Tex., for James Forest Crouse and Karin Agnes Crouse, defendants.

Jane Ford, Ford & Ventura, Houston, Tex., for William Buschardt and Shirley Buschardt, defendants.

## MEMORANDUM OPINION

JOHN R. BLINN, Bankruptcy Judge:

First Federal Savings of Austin, the creditor holding purchase money mortgages on the residences of both debtors, filed a complaint in each case on January 29, 1981, seeking relief under Section 362. After the filing of the complaints, the creditor sought from debtors' counsel mutually convenient times to schedule inspections by real estate appraisers who would assist in the presentation of the creditor's evidence. However, for reasons apparently not then communi-

cated to counsel for the creditor, counsel for the debtors refused.

Accordingly the creditors filed in each adversary proceeding on February 17, 1981, Plaintiff's Motion for Entry Upon the Premises for Inspection which the Court set for hearing February 25, 1981. At the hearing debtors' counsel explained the original request as well as the Motion were resisted out of a belief that Section 362(d)2 [1] did not apply in Chapter 13 cases; hence acquiescing in discovery to prove equity (or lack thereof) would be unnecessary and inconsistent. The Court indicated it would rule on the issue at the outset of the preliminary hearings set two days hence. Meanwhile the Court allowed opportunity for briefing (which the Creditor utilized) and suggested an agreed opportunity for view by the appraiser without waiver by either party of its arguments.

At the hearing on February 27, 1981, the Court announced its ruling from the bench but indicated a written opinion would be issued to further elaborate the view of the Court. This opinion tracks the ruling from the bench.

The primary support for the debtors is *In re Feimster*, 3 B.R. 11, 6 B.C.D. 131 (Bkrtcy. N.D.Ga.1979). In that decision written by Judge Norton less than two months after the effective date of the Code, the Chapter 13 debtor agreed he had no equity in the property and the property was not necessary to an effective reorganization; hence, if § 362(d)2 applied the stay would be terminated. However, the Court found the word "reorganization" used only in Chapter 11 reorganization cases and Judge Norton therefore determined the word, the clause and the entire provision (§ 362(d)2) were inconsistent with Chapter 13 and hence inapplicable. Judge Norton is not alone in his conclusion; *In re Sulzer*, 2 B.R. 630, 5 B.C.D. 1314 (Bkrtcy.S.D.N.Y.1980), al-

---

1. (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

though a Chapter 11 case, agreed in *dicta*. More recently *In re Youngs*, 7 B.R. 69 (Bkrtcy.D.Mass.1980) has followed *Feimster* and *Sulzer* but only to the point of rejecting "necessity for an effective reorganization" while retaining "equity", a result at least this Court considers neither supportable nor wise. Contrary to the *Feimster* line of cases are two opinions by Judge DeGunther—*In re Brock*, 6 B.R. 105, 6 B.C.D. 1065 (Bkrtcy.N.D.Ill.1980) and *In re Zellmer*, 6 B.R. 497 (Bkrtcy.N.D.Ill.1980)—and *In re Ruark*, 7 B.R. 46 (Bkrtcy.D.Conn.1980).

Most critical to this court in *Feimster* is its ignoring of § 103:

> Except as provided in Section 1161 [2] of this title, Chapters 1, 3 and 5 of this title apply in a case under Chapters 7, 11 or 13 of this title.

The intent of the drafters of the Code was to provide similar approaches for all types of cases except where obviously inappropriate, for example rehabilitation versus liquidation. Central to that concept are the "administrative powers" found in Sections 361 through 366. It is wholly at variance with that intent to divine from the single word "reorganization" an additional significant but unstated exception to Section 103.

But beyond Section 103, legislative history explains the thrust of § 362(d)2 in all cases. Under the Bankruptcy Act (before the adoption of the Rules of Bankruptcy Procedure) neither procedure nor statutory criteria were present for obtaining or terminating a stay. Thus over time persuasive debtor counsel convinced many courts to issue a blanket stay at the outset of a case, particularly under Chapter 11. But as beneficial as this procedure was for the rehabilitation effort, it frequently brought grief to creditors who had no defined or certain method to gain relief from such a stay.

The Rules of Bankruptcy Procedure which became effective in the Seventies presented a trade. A stay automatically was effective on the filing of the petition but the Rules set forth both a procedure and a priority for obtaining relief from that stay. Unfortunately, although the automatic nature of the stay was superior to the earlier artifice, the supposed procedure and priority for hearing complaints to modify stay were not as beneficial to creditors in practice as they read in theory. Thus, great pressure developed within the lending community for additional and more certain protection against what was perceived as "debtor oriented courts." The result—as quite clearly described in the legislative history [3]—was to substitute a legislative determination for that of the Court and to mandate that in every instance where a court found no equity and no necessity for an effective reorganization the stay was to be terminated instanter.

To adopt the creditor's view of 362(d)2 deprives the debtor of no safeguard; to adopt the debtors' view is to blatantly ignore a Congressional mandate. Hence 362(d)2 does apply in Chapter 13 cases and the Court will enter orders allowing the inspection, overruling the debtors' threshold arguments and the case will proceed on the merits under 362(d)2.[4]

---

2. Section 1161 deals with railroad reorganizations; hence this is *not* an exclusionary factor in the case at bar.

3. "The Court shall grant relief from the stay if there is no equity and it is not necessary to an effective reorganization of the debtor. This latter requirement is contained in Section 362(d)(2). This section is intended to solve the problem of real property mortgage foreclosures where the bankruptcy petition is filed on the eve of foreclosure". 124 Cong.Rec. H11092–3 (Sept. 28, 1978); S17409 (Oct. 6, 1978).

4. Obviously if "reorganization" is to be appropriate to Chapter 13 it must mean at least "economic rehabilitation of the debtor" (as defined in *Ruark, supra*) and probably more, a definition obviously to be refined in frequent and perhaps endless litigation. At the same time what is "necessary" will also undoubtedly suffer a similar fate. For example see *In re Jones*, 7 B.R. 141 (Bkrtcy.E.D.Pa.1980) in which the court found an automobile not "necessary" where the debtor had access to public transportation and his stepfather's automobile. But these are problems for another day.