**In the Matter of Leonard K. GARNER and Sallie G. Garner, Debtors.**

**Bankruptcy Nos. 81–B–20336, 81–Adv–6093.**

United States Bankruptcy Court, S. D. New York.

Aug. 28, 1981.

Spodek & Schklair, New York City, for debtors; David B. Gilbert, of counsel.

Walter L. and Robert M. Post, Hicksville, N. Y., for Dale Funding Corp.

## DECISION ON COMPLAINT OF DALE FUNDING CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This Chapter 13 case illustrates how a secured claim against the debtors' principal residence, which could not be modified under Code § 1322(b)(2), may nevertheless be subject to a cram-down to the value of the collateral. The mortgagee foreclosed upon the property and obtained a judgment of foreclosure prior to the filing of the petition for relief under Chapter 13 of the Bankruptcy Reform Act of 1978; 11 U.S.C. 1301 *et seq.* The change in the plaintiff's status from mortgagee to judgment lienor is a crucial factor in the application of the so-called cram-down concept.

### FINDINGS OF FACT

1. The debtors, Leonard K. Garner and his wife, Sallie G. Garner, filed their joint petition for relief under Chapter 13 of the Bankruptcy Code on May 27, 1981.

2. The plaintiff, Dale Funding Corporation, was the mortgagee on the debtors' principal place of residence in the Town of West Haverstraw, Rockland County, New York.

3. Dale Funding commenced an adversary proceeding for relief from the automatic stay, as authorized under Code § 362(d). A valuation hearing under Code § 506 was held in conjunction with the complaint for relief from the stay.

4. On August 26, 1976, the debtors executed and delivered to Dale Funding a mortgage and bond in the amount of $37,-200.00 which was recorded in the Office of the Clerk of the County of Westchester. The mortgage was guaranteed by the Veterans' Administration. The debtors entered into possession of the mortgaged premises and made the required mortgage payments to May 1, 1979. Thereafter, due to Mrs. Garner's illness and Mr. Garner's loss of employment they failed to make further payments. Dale Funding then commenced a foreclosure action which resulted in a judgment of foreclosure in the sum of $48,-073.37, which was entered on April 7, 1981.

5. A foreclosure sale occurred on May 29, 1981, two days after the debtors filed their Chapter 13 petition. Dale Funding did not have notice of the filing of the Chapter 13 petition when the deed of sale was issued to the Veterans' Administration, the guarantor of the mortgage.

6. The sale to the Veterans' Administration after the filing of the debtors' Chapter 13 petition, and in the face of the automatic stay under Code § 362, does not have any significance to the determination in this matter, since such sale is void.

7. The uncontroverted evidence offered by Dale Funding as to the value of the debtors' residence established a present market value of $40,000.

8. The debtors testified that they are now in a position to pay the face amount of Dale Funding's claim during the period of their proposed Chapter 13 plan because they are now both employed, as are their two children who will also contribute to funding the plan. Their main objective in this Chapter 13 case is to save their home.

### DISCUSSION

*Modification of Secured Claims*

Dale Funding correctly observes that Code § 1322(b)(2) expressly forbids a

modification of the rights of a holder of a claim secured only by a security interest in real property that is the debtors' principal residence. Thus, Dale Funding's claim under its mortgage, which amounted to approximately $48,000, could not be crammed down against it. Moreover, the debtors can no longer propose to make up their default under the mortgage and reinstate its maturity for continued payments in accordance with its terms because their rights under the mortgage were terminated pursuant to state law when Dale Funding obtained a judgment of foreclosure prior to the filing of the Chapter 13 petition. In such case a Chapter 13 case can not cure or achieve a deceleration of a pre-petition mortgage that was reduced to judgment. *In re Butchman*, 4 B.R. 379, 6 B.C.D. 403 (Bkrtcy.S.D.N.Y. 1980); *In re Pearson*, 10 B.R. 189, 7 B.C.D. 567 (Bkrtcy.E.D.N.Y.1981); *In re La Paglia*, 8 B.R. 937, 7 B.C.D. 333 (Bkrtcy.E.D.N.Y. 1981).

However, Dale Funding's claim is not based only upon a security interest in the debtors' principal residence. The claim was reduced to judgment and constitutes a judicial nonconsensual lien against the debtors' home. Code § 101(27) defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." Manifestly, the holder of a judicial lien against real estate does not occupy the same status as "a claim secured only by a security interest in real property" as expressed under Code § 1322(b)(2). Prior to the foreclosure judgment Dale Funding held a security interest, which is defined under Code § 101(37) to mean a "lien created by an agreement." Reference must also be made to Code § 101(36) which defines a "security agreement" to mean an "agreement that creates or provides for a security interest." When Dale Funding obtained its rights under the foreclosure judgment it could no longer assert that its rights in the real estate were "secured only by a security interest" under an existing consensual mortgage and therefore not subject to modification under Code § 1322(b)(2). *In re Jordan*, 5 B.R. 59, 2 C.B.C.2d 635 (B.C.N.J.1980). Hence, Code

§ 1322(b)(2) permits the debtors to "modify the rights of holders of secured claims", not otherwise only secured by a security interest in the debtors' principal residence.

In order to achieve confirmation of their plan the debtors must satisfy Code § 1325(a)(5), which requires that

"(5) with respect to each allowed secured claim provided for by the plan—

.        .        .

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . .".

As of this date, Dale Funding has established that the value of its interest in the estate's interest in the property in question as expressed in Code § 506(a), amounts to $40,000. In accordance with Code § 506(a), the balance of Dale Funding's claim against the debtors is unsecured. If this value remains the same at the time of confirmation the debtors would then be required to pay Dale Funding's $40,000 secured claim during the period of their plan an amount, allowing for current interest, that would have a present value of $40,000. The unsecured balance would be paid in the same fashion as their other unsecured creditors.

*Request For Relief From the Stay*

Under Code § 362(d) relief from the automatic stay is authorized under either of two alternative provisions. Under subsection (1) a creditor may obtain relief "for cause", which includes the lack of adequate protection of the creditor's interest in the property in question. The second alternative is expressed in subsection (2) and requires proof (A) that the debtor does not have equity in the property *and* (B) that the property "is not necessary to an *effective reorganization.*" [Emphasis added] It is this alternative provision in Code § 362(d)(2) which has caused considerable divergence of opinions by the courts when dealing with Chapter 13 cases.

Some courts have said that Code § 362(d)(2) does not apply in a Chapter 13 case because unlike Chapter 11, which is entitled "Reorganization" and pertains mainly to business reorganizations, Chapter 13 involves only individuals with regular income and is not available to either partnerships or corporations. *In re Feimster*, 3 B.R. 11, 6 B.C.D. 131 (Bkrtcy.N.D.Ga.1979); *In re Sulzer*, 2 B.R. 630, 5 B.C.D. 1314 (Bkrtcy.S.D.N.Y.1980); *In re Breuer*, 4 B.R. 499, 6 B.C.D. 136 (Bkrtcy.S.D.N.Y.1980). Therefore such individuals with regular income, by definition do not seek any reorganization under Chapter 13 which requires a solicitation of consents from the creditor body, as in Chapter 11, but only an opportunity to pay their creditors over a period of time provided for in the plan, whether or not their creditors consent to the plan. Although Chapter 13 may be availed of by an individual in business, described in Code § 109(e), whose unsecured and secured debts are less than $100,000 and $350,000 respectively, most Chapter 13 debtors are not self-employed individuals. In any event, whether self-employed or not, the debtor does not effect a reorganization under Chapter 13; merely an individual economic rehabilitation.

It has also been held that only subsection (A) applies under Code § 362(d)(2) and that the only issue to be determined is whether or not the debtor has any equity in the property since proof as to the debtors' need for the property for an effective reorganization is inappropriate with respect to Chapter 13 individuals with regular income. *In re Youngs,* 7 B.R. 69 (Bkrtcy.D.Me.1980).

A third body of judicial authorities has held that both subsections (A) and (B) apply under Code § 362(d)(2) because Code § 103(a) expressly mandates that Chapters 1, 3, and 5 apply in a case under Chapter 7, 11 or 13. Hence, Code § 362(d)(2), which is in Chapter 3, must be applied to its full extent in a Chapter 13 case. *In re Buschardt*, 9 B.R. 400, 7 B.C.D. 454 (Bkrtcy. 1981); *In re Ruark*, 7 B.R. 46 (D.C.1980); *In re Zellmer*, 6 B.R. 497 (Bkrtcy.N.D.Ill.1980). There is no question that Code § 103(a) expressly makes Chapter 3 applicable in a Chapter 13 case. However, it does not follow that every *section* and *subsection* in Chapter 3 must apply with equal vigor in Chapter 13, notwithstanding that such application produces an unintended or illogical result.

The split of opinions involving the application of Code § 362(d)(2) in Chapter 13 cases does not approach the quagmire created by the confirmation standard under Code § 1325(a)(4), which calls for a payment of unsecured claims "not less than the amount that would be paid" on liquidation. The courts have interpreted the phrase "not less than" to range between zero, minimal, meaningful or substantial payments. See the cases listed in the appendix in *In re Scher*, 12 B.R. 258, 7 B.C.D. 979 (Bkrtcy.S. D.N.Y.1981). Nevertheless, the lack of verbal precision in Chapter 13, especially resulting from the incorporation by reference of all of Chapter 3, has also created a growing diversity of approaches with respect to the manner in which the language in Code § 362(d)(2) may be applied in Chapter 13 cases.

In order to appreciate the application of Code § 362(d) in a Chapter 13 case, consideration must first be given to the manner in which the Bankruptcy Code assigns the burden of proving the essential elements delineated under this section. Code § 362(g)(1) states that the party requesting relief from the stay has the burden of proof on this issue. However, according to Code § 362(g)(2), the debtor has the burden of proof on all other issues. Thus, the debtor must establish the second element under Code § 362(d)(2)(B), namely that the property is necessary "to an effective reorganization." This means that in the usual business reorganization case under Chapter 11, if the creditor seeking relief from the automatic stay proves that the debtor lacks equity in the property, the debtor may prevail under Code § 362(d) only upon satisfaction of the burden of proving that the property is necessary to an effective reorganization. If the debtor meets this burden of proof the debtor will prevail because both elements must be established under Code § 362(d)(2) before relief may be granted.

In a business reorganization case under Chapter 11, property will be necessary to an effective reorganization if it is income-producing, such as leased space, or if the property is income-related, in that it is required for the production of income in the debtor's business. Machinery and equipment, accounts receivable, inventory, office space, or business locations fall into this category. Hence, a debtor who also maintains an office in his home may not employ the automatic stay to prevent a mortgagee's foreclosure upon his house when the office could just as well be located at another address. The convenience of having an office in the debtor's home does not mean that the home is necessary to an effective business reorganization so that the mortgagee should be required to suffer the debtor to reside in the home rent free and mortgage free. *In re Sulzer*, 2 B.R. 630, 5 B.C.D. 1314 (S.D.N.Y.1980).

In a Chapter 13 case, there usually is no business involved. Even if the debtor is engaged in a business as an individual proprietor whose unsecured debts are less than $100,000 and whose secured debts do not exceed $350,000, as required under Code § 109(e), the relief sought transcends the debtor's business activities and includes all of the debtor's personal assets, even property acquired after the filing of the Chapter 13 petition, Code § 1306(a)(1), and earnings from services performed after the commencement of the case, Code § 1306(a)(2). Therefore the debtor's non-business assets, such as a home, automobile, and personal effects are included in the estate for purposes of relief under Chapter 13. In most Chapter 13 cases no business property is involved; the debtor merely seeks to avoid losing a home or an automobile to a Chapter 7 liquidating trustee or to a foreclosing mortgagee. Under Chapter 13 the debtor attempts to keep the encumbered asset, usually by proposing a plan that will provide for the curing of defaults within a reasonable time and the maintenance of payments while the case is pending, as expressed in Code § 1322(b)(5). The debtor may also modify the rights of secured claims other than those secured only by a security interest in real property that is the debtor's principal residence, as stated in Code § 1322(b)(2). Clearly, these non-income producing and non-business related assets are not necessary to "an effective reorganization." See *In re Jones*, 7 B.R. 141, 143 (E.D.Pa.1980) where an automobile was not necessary to an effective reorganization because public transportation was available. Although a debtor would be physically and emotionally inconvenienced by the loss of a home or an automobile, an individual with regular income could, nevertheless, offer to apply that income towards the debts owed and achieve a confirmation if the payments to be made under the plan satisfy the Code § 1325(a)(4) standard as "not less than the amount that would be paid" on liquidation. However, the only reason the debtor applied for relief under Chapter 13 was to save the house or automobile. The fact that the debtor is an "individual with regular income", as defined in Code § 101(24) and could meet the confirmation standard under Code § 1325(a)(4), notwithstanding that the creditors' consents are not required, is of little solace to a debtor who cannot save his or her home or automobile, as the case may be. Nevertheless, since the home or automobile is not necessary for a successful confirmation under Code § 1325(a)(4) the debtor would not be able to have the benefit of the automatic stay under Code § 362 once the creditor proves that the debtor lacks equity in the home or the automobile, because the debtor could not satisfy the second factor under Code § 362(d)(2)(B) that the home or automobile is necessary for an effective "reorganization."

It is therefore apparent that not only is a "reorganization" not involved under Chapter 13 but also that the requirement that a debtor must prove that a home or automobile is necessary to an effective reorganization can almost never be met in those cases where the home or automobile does not generate the income from which the debtor will be able to fund a plan. Since in most Chapter 13 cases the home or automobile usually is not income-producing,

it necessarily follows that once the creditor proves lack of equity, the debtor will lose these items as a result of the lifting of the stay, notwithstanding that the debtor may be able to cure any defaults within a reasonable time and continue to make payments while the case is pending, as authorized under Code § 1322(b)(5). Clearly, this was not the intended result under Chapter 13 where a consumer debtor is given an opportunity to retain his assets while repaying debts over a period of time. Even though there is no equity in a home or an automobile, a Chapter 13 debtor is afforded an opportunity under Code § 1322(b)(5) to cure any defaults within a reasonable time and to continue to make payments with respect to a secured claim, provided that the creditor is adequately protected against a decrease in value of the property in question. Therefore the criterion in a Chapter 13 case should be not whether the property is necessary to an effective reorganization, but rather that the creditor may be adequately protected against further loss or decrease in value during the continuation of the stay. This court, therefore concludes that Code § 362(d)(2) and the twin elements of the debtor's lack of equity and that the property is not necessary to an effective reorganization are inconsistent with the relief intended under Chapter 13 and, therefore, inapplicable for purposes of weighing the lifting of the automatic stay under Code § 362. Thus, while Code § 103(a) declares that Chapter 3 applies in a Chapter 13 case, reference must only be made to Code § 362(d)(1), involving the element of cause, including lack of adequate protection, for the purpose of considering a request for relief from the stay in a Chapter 13 case.

*Cause; Lack of Adequate Protection*

■ Dale Funding will be adequately protected within the meaning of Code § 362(d)(1) if the debtors are able to pay Dale Funding's allowed secured claim, which is presently valued at $40,000, together with interest during the period covered by their plan and are also able to maintain the current real estate taxes, water charges and all other charges that may become liens

against their property. The debtors have offered to make these payments and have testified that they are now financially able to comply with all other payments required to achieve a confirmation. Therefore the automatic stay should continue, at least until the confirmation hearing, at which time it will be determined whether or not their financial position and their budgeted expenses will justify a confirmation.

## CONCLUSION OF LAW

Dale Funding's request for relief from the automatic stay imposed under Code § 362 is denied, without prejudice to renewal should the debtors fail to achieve a speedy confirmation.

SUBMIT ORDER ON NOTICE.