**In re Maxwell Richard TROMBLEY, Debtor.**

**INTERNATIONAL HARVESTER CREDIT CORPORATION, Plaintiff,**

v.

**Maxwell Richard TROMBLEY, Defendant.**

**Bankruptcy No. 83–72.**
**Adv. No. 83–0055.**

United States Bankruptcy Court,
D. Vermont.

July 7, 1983.

* 5 B.C.D. 90 (B.C.Conn. 2/6/79).

James B. Anderson, Rutland, Vt., for plaintiff.

John E. McCamley, Rutland, Vt., for debtor.

Alan R. Medor, Rutland, Vt., Trustee, pro se.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

On April 15, 1983, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code (Code). On May 10, 1983, plaintiff, International Harvester Credit Corporation (Harvester), brought this adversary proceeding to lift the stay imposed by § 362(a) of the Code upon the Debtor's filing of his petition for relief. The complaint came on for hearing after notice. From the records in the case and the testimony adduced at trial, the facts set forth below have been established.

## FACTS

The Debtor is a trucker who works as an independent contractor, primarily under contract with a haulage broker on an "as needed" basis. Under the broker's contract, the Debtor is guaranteed $0.80 per loaded mile and a lesser fee per empty mile but is not guaranteed a monthly minimum number of paid miles. The Debtor has no source of income other than that generated by haulage. The Debtor operates two tractor cabs, but could continue business operations with only one cab.

Harvester holds a purchase money security interest in one of the two cabs (hereinafter referred to as "the truck") under a retail installment contract of sale executed by the Debtor and assigned to Harvester on June 24, 1982. The deferred payment price of the truck was $89,600.16 on a cash price of $68,200.00 less downpayment of $14,700.00 yielding an unpaid cash balance of $53,500.00. The contract of sale requires 48 successive monthly installment payments of $1,560.42 each beginning July 21, 1982. The truck is owned by the Debtor subject to Harvester's lien in the amount of $74,900.00.

The Debtor made four payments under the installment contract: In July, August, September and October, 1982. Delinquent as of the date of the petition for relief were five installments totaling $6,802.10 and interest thereon at the maximum rate allowed by law. Under the acceleration clause of the contract, the outstanding balances as of the date of the petition for relief were: Principal, $50,328.23, and interest as financed, $18,330.25, less a partial

interest refund based on the "sum-of-the-digits" computation method. Valuation tables used in the trucking industry indicated an average retail worth not exceeding $44,-225.00 on June 1, 1983, for the vehicle, model and year, corresponding to the Debtor's truck. Depreciation continues prospectively at an average monthly rate of $850.00.

Since filing his petition for relief, the Debtor has liquidated selected assets to reduce his debt service; sale proceeds of approximately $4,250.00 free and clear have been deposited in a trust account. The Debtor continues his efforts to convert selected assets-in-use to current assets, but it is not certain that such conversion will produce proceeds free and clear. The Debtor has nominal or negligible balances in his checking and savings accounts. The Debtor's monthly cash flow excluding debt service and excluding the cost of running his two tractor cabs is summarized below:

| ITEM | ROUND DOLLARS | |
|---|---|---|
| gross receipts | 10,000 | |
| less/expenses: | | |
| business | | 2,000 |
| personal | | 560 |
| | (2,560) | 2,560 |
| Balance | 7,440 | |

The Debtor proposes to use the balance available of $7,440.00 to run his tractor cabs and to meet payments under his Plan of Reorganization (Plan).

## DISCUSSION

Section 362(d) of the Code provides that relief from the stay imposed pursuant to § 362(a) shall be granted, "(1) . . . for cause including the lack of adequate protection of an interest in property . . . or (2) the debtor does not have an equity in such property and such property is not necessary to an effective reorganization."

There is a divergence of opinion as to whether Section 362(d)(2) applies to Chapter 13 proceedings. Some cases have held that the subsection does not apply to Chapter 13 filings. *In Re Feimster,* 3 B.R. 11 (Bkrtcy.N.D.Ga.1979); *In re Sulzer,* 2 B.R. 630 (Bkrtcy.S.D.N.Y.1980); *In Re Youngs,* 7 B.R. 69 (Bkrtcy.D.C.Mass.1980). The contrary has been held in other cases. *In Re*

*Crouse,* 9 B.R. 400 (Bkrtcy.S.D.Tex.1981); *In Re First Conn. Small Business Investment Co. v. Ruark,* 7 B.R. 46 (Bkrtcy.D.C. Conn.1980); *In Re Zellmer,* 6 B.R. 497 (Bkrtcy.N.D.Ill.1980). If subsection 362(d)(2) is applied in the instant case, Harvester nevertheless is entitled to relief from stay for the reason that the Debtor testified at the hearing that the truck is not necessary for an effective reorganization; in addition, Harvester established that the Debtor is $12,042.00 short of having any equity in the truck:

| ITEM | ROUND DOLLARS | |
|---|---|---|
| cash price equity | 68,200 | |
| less: accelerated depreciation, reflecting fair market value at date of hearing | | 23,975 |
| less: outstanding principal | | 50,300 |
| less: accrued finance charges | | 5,233 |
| less: interest on delinquent installments | | 734 |
| | (80,242) | 80,242 |
| (Equity) | (12,242) | |

Under the straight-line method of depreciation for an asset-in-use, the Debtor still has no equity in the truck;

| ITEM | ROUND DOLLARS | |
|---|---|---|
| cash price equity | 68,200 | |
| less: straight-linedepreciation over 5 years for assets-in-use, pro-rated | | 13,640 |
| less: outstanding principal | | 50,300 |
| less: accrued finance charges | | 5,233 |
| less: interest or delinquent installments | | 734 |
| | (69,907) | 69,907 |
| (Equity) | (1,707) | |

As the Debtor has no equity in the truck and the truck is not necessary to consummate an effective reorganization, the stay imposed by § 362(a) should be lifted. Assuming, *arguendo,* that the Debtor did have equity in the truck, the stay should still be lifted in that the Debtor is in no position to give Harvester adequate protection during the Debtor's reorganization.

There is no precise definition in the Code for the term "adequate protection" but the legislative intent inherent in the term is that the holder of an interest in property affected by the § 362(a) stay be provided with the "indubitable equivalent" of his interest in the stayed property. Code § 361(3). Adequate protection is compensa-

tory in nature. *In Re Murel Holding Corporation,* 75 F.2d 941 (2d Cir.1935) (Learned Hand, J.). To give Harvester adequate protection the Debtor may be required to make periodic cash payments or provide additional or replacement liens to the extent that the § 362(a) stay results in a decrease in value of Harvester's property interest. Code § 361.

█ The Debtor has no excess or surplus capital and is relying on future cash flow to meet the expenses or running his tractor cabs and of making payments under the Plan. He is not guaranteed work, but if all goes well he will realize business proceeds in the neighborhood of $7,440.00 monthly. He intends to pay $4,000.00 monthly under the Plan; but $4,000.00 monthly will not meet current payments to secured creditors, much less cure arrears, even less compensate adequately unsecured creditors. Assuming some assets are liquidated and disbursements to unsecured creditors are made from the Debtor's $4,000.00 monthly payment under the Plan, the Debtor still has only $3,440.00 with which to pay taxes and operate his two tractor cabs. It costs the Debtor in excess of $2,600.00 monthly to operate the Harvester truck. As a practical matter, there are insufficient funds left with which to pay taxes and to operate the other tractor cab. If the other tractor cab is not operated, gross receipts drop by up to 50%, similarly impairing the Debtor's ability to make payments under the Plan.

It does not appear likely that, as things stand, the Debtor will effectively consummate reorganization. Under these circumstances, the Debtor's postulation of payment under the Plan is not adequate protection as to Harvester. Further, Harvester would have to receive more than the monthly installment payment provided for the Plan to be adequately protected with respect to ongoing depreciation and finance and interest carrying costs. Besides the bare promise of periodic cash payments under the Plan, the Debtor could provide Harvester with junior liens on other assets-in-use. However, the Debtor's other assets-in-use are subject to purchase money security

interests and these assets, if liquidated, would in all probability yield little if anything in the way of sale proceeds in excess of the amount of the purchase money security interests. The Court is not inclined to view a junior lien on such encumbered property as adequate protection. It therefore appears that even had the Debtor any equity in the truck, he could not provide Harvester with adequate protection during his proposed reorganization.

## ORDER

In accordance with the foregoing,

IT IS ORDERED, that the automatic stay imposed pursuant to § 362(a) of the Bankruptcy Code is TERMINATED.