**In the Matter of Gregory D. ZELLMER, Debtor.**

**Bankruptcy No. 80 B 00580.**

United States Bankruptcy Court, N. D. Illinois, W. D.

Sept. 22, 1980.

Rolland McFarland, Rockford, Ill., for debtor, Gregory D. Zellmer.

Charles Wellington, for First National.

John B. Roseberg, Rockford, Ill., for General Tire.

Mary Gorman, Rockford, Ill., for Kelley–Williamson.

## MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the following pleadings:

1) Application of First National Bank of Monroe to Order the Trustee to Abandon Property.

2) Notice of Rejection of Plan, also filed by First National.

3) Objection of General Tire Company to Confirmation.

4) Objection of Kelley–Williamson Company to Confirmation.

These matters have been consolidated for trial. The Debtor, Gregory D. Zellmer, is represented by Attorney Rolland McFarland; First National by Attorney Charles Wellington; General Tire by Attorney John Roseberg; and Kelley–Williamson by Attorney Mary Gorman.

\*   \*   \*   \*   \*   \*

At the outset questions of procedure are raised due to the somewhat misleading pleadings filed by First National.

1) The "Application to Abandon Property" seeks an Order that the Trustee abandon property. The authority for such an order, although not set forth in the pleading, presumably is Section 554. The consequence of such an order would be the removal of the abandoned property from the estate and termination of the automatic stay by application of Section 362(c)(1). First National could then file a replevin in the state courts.

An "Application to Order the Trustee to Abandon Property" is not an Adversary Proceeding under Part VII of the Federal Rules of Bankruptcy Procedure and re-

quires no filing fee. A "Complaint to Vacate the Automatic Stay" and a "Complaint to Reclaim Property" are Adversary Proceedings under Part VII and require a $60 filing fee. Inasmuch as the "Application" achieves virtually the same results as the "Complaints", counsel for secured creditors are filing such applications with increasing frequency to avoid the filing fee and the more formalized procedures of Part VII. This is a matter to be considered and perhaps dealt with in the good judgment of the Rules Committee.

■ Section 554(b) permits the court to order a trustee to abandon property that is burdensome or of inconsequential value. In this case the Debtor's truck is anything but burdensome to the estate or of inconsequential value. Indeed, it is just about the only asset of the estate, and essential to the successful completion of the Debtor's Chapter 13 Plan. It would appear, then, that First National's Application to Order the Trustee to Abandon Property could be dismissed on this ground alone.

2) First National's "Notice of Rejection of Plan" does not constitute an "Objection to Confirmation". When the Code became effective many creditors filed their Proofs of Claim with the notation "REJECT" or "OBJECT". Rarely, however, did these creditors appear at the 341 Meeting or the Confirmation Hearing to advise the court of the grounds for their "Rejection" or "Objection". Presumably, these creditors expected the court to prosecute their "Rejections" or "Objections". This the Court will not do.

A creditor seeking to Object to Confirmation must file such a pleading, so captioned and containing allegations necessary to advise the court and the debtor of the basis of the Objection.

\*   \*   \*   \*   \*   \*

In this case, there being no objection, the Court will treat First National's pleadings in the nature of a "Complaint to Vacate Automatic Stay" and an "Objection to Confirmation".

\*   \*   \*   \*   \*   \*

## FACTS

Zellmer filed his Chapter 13 Petition on June 9, 1980. The Plan proposes to pay a priority claim of $1615.31 in full; First National, the only secured creditor, with a "payoff" balance near $20,000, will be paid in full; unsecured claims totalling approximately $16,000 will be paid at 1%.

First National's security is a 1975 International Truck and a 1975 Oldsmobile.

There is the usual disagreement concerning the value of the truck. The low estimate is $13,000 offered by a witness who sold the truck to Zellmer last year for $22,-000. The high estimate is $18,000 offered by the Debtor himself.

Happily, there is general agreement that the Olds is worth $1000.

## ANALYSIS

### 1. THE DEBTOR

Zellmer was candid in his testimony. He made no attempt to paint a prettier picture than that which exists. He is in deep financial trouble. At best he can hope to pay a priority tax claim and preserve the truck upon which his livelihood depends. Payment of unsecured claims totalling $16,000 is beyond his reach and he offers to pay these creditors a dividend of only 1%.

In short, he seeks to achieve what amounts to a "forced reaffirmation" of one secured debt under the liberal provisions of Chapter 13, and to deal with the unsecured debts in a manner not unlike a Chapter 7 liquidation. He asks that the old purpose of Chapter XIII, to pay one's debts, yield to a new purpose, to keep one's truck.

When asked if he could complete the Plan, Zellmer testified, "Sure gonna try, it's better'n quittin'". When asked what he would do if he couldn't complete the Plan, Zellmer replied, "I'll find out who my friends are".

### 2. FIRST NATIONAL'S COMPLAINT TO VACATE STAY

The Court addresses first the issue raised by the request of First National to vacate the automatic stay of Section 362.

Recently this Court held, as a collateral issue in an Adversary Proceeding, that Section 362(d) does apply to Chapter 13:

"A threshold question is whether the concept of "adequate protection" found in Section 361 applies to Chapter 13 proceedings. Section 362(d), which mandates relief from the stay if adequate protection is lacking, mysteriously employs the term "reorganization", suggesting Congress had in mind Chapter 11 proceedings only. It is true that under the Code a businessman is eligible for Chapter 13, but it is inappropriate and misleading to label a Chapter 13 "Adjustment of Debts of an Individual with Regular Income" with the same word that constitutes the title of Chapter 11 of the Code: "Reorganization". Moreover, under Section 361(1) adequate protection may be provided by periodic cash payments from the trustee to the creditor. The very nature of Chapter 13 proceeding satisfies this method of providing adequate protection if there is a fair relationship between the depreciation in the value of the property and the periodical payments to the creditor. Did Congress, then, intend that the protection given to a secured creditor in a Chapter 13 proceeding be limited to Section 1325? Apparently not, for there is no specific exclusion of Sections 361 and 362 from Chapter 13 proceedings, and the general rule is that Chapter 3 of the Code applies to Chapter 13 proceedings. The Court concludes, therefore, that Sections 361 and 362 apply to Chapter 13 proceedings."

In the meantime, Bankruptcy Judge Norton held in *In the Matter of Joseph Feimster*, 3 B.R. 11, 6 B.C.D. 131, 1 C.B.C.2d 596, that:

"The critical term "reorganization" appearing in subsection (B) of 362(d)(2), is a term no—where else appearing in the Bankruptcy Code except in Chapter 11. It does not appear in Chapter 13. The term "Adjustment of Debts of an Individual" is the phrase used in Chapter 13. Reorganization is not defined in § 101. If

Congress, in drafting § 362(d)(2)(B), had intended to make said subsection applicable to debtors other than a debtor in Chapter 11 reorganization, Congress could easily have added the phrase "an Adjustment of Debts of an Individual with Regular Income". Or, Congress could have stricken the word "reorganization" and inserted "rehabilitations under Chapter 11 and 13", or something like: "Chapter 11 Reorganization or Chapter 13 Adjustment Debts".

The absence of the use of the term "reorganization" anywhere except in Chapter 11 leads this court to the conclusion that its use in § 362(d)(2)(B) makes § 362(d)(2) applicable only to Chapter 11 Reorganization cases; and not applicable to Chapter 13 cases. The Chapter 13 automatic stay may not be terminated under Section 362(d)(2)(B)."

■ While I applaud Judge Norton's reasoning, I am again compelled to the conclusion that Section 362 in its entirety is applicable to Chapter 13 proceedings. Congress, in spite of its ill-advised use of the word "reorganization", can hardly have intended that part of Section 362(d) should apply to Chapter 13 proceedings, and part of it not apply.

    *    *    *    *    *    *

■ If ever there was a trap for the unwary creditor it is Section 362(d). Under subsection (2) thereof First National must prove that the debtor does not have equity in the property *AND* that such property is not necessary to an effective reorganization (sic). First National has proved the first element, but clearly fails on the second. In attempting to prove the lack of equity First National has offered a witness who testified the truck's value is as low as $13,000.

Now look at subsection (1). Here First National seeks to show that there is a lack of adequate protection. On this issue it would be to First National's advantage to prove the highest possible value for the truck. Accepting the testimony of First National's own witness the Court need only compute adequate protection based on a $13,000 valuation.

Payment of a $13,000 debt over 5 years at 14% would require payments of approximately $300 per month. Zellmer's Plan should provide payments of at least $400 per month on the First National claim, thereby satisfying the requirement of adequate protection, even if the truck depreciates to zero at the end of 5 years.

(The creditor with a secured claim who offers testimony of value of the secured property in the low range of what the property is worth exposes himself to another risk: Unless the Plan provides to the contrary, a creditor with a secured claim is paid in full the value of his security and the balance as an unsecured claim. Here, First National is almost inviting Zellmer to amend his Plan to provide that First National be paid 100% of $13,000, and only 1% on the unsecured balance of its claim. Such is not the present intent of the Plan and the Court will not so order.)

### 3. THE OBJECTIONS TO CONFIRMATION OF FIRST NATIONAL, GENERAL TIRE AND KELLEY-WILLIAMSON

The case presents a challenge to this Court as to whether it will find "good faith" and confirm a plan that seeks to do little more than achieve a "forced reaffirmation" of an unsecured debt and provide for only a 1% dividend to unsecured creditors.

The revulsion of bankruptcy judges across the country to zero percent and one percent Chapter 13 Plans is demonstrated in many reported cases. Having administered Chapter 13 Plans under the philosophy that Chapter 13 was a method of repaying creditors, I tend to share that revulsion. Nevertheless, in some rare instances the circumstances in which a debtor finds himself are such that he is capable of making payments only in an amount which would enable him to preserve selected secured property, such as his home, or equipment necessary for his livelihood. This is such a case, and the liberal provisions of Chapter 13 are available.

The issues raised by the concept of good faith are many, perhaps infinite. In this case the primary initial thrust of the unsecured creditors' Objection to Confirmation was that the Debtor was capable of paying more to unsecured creditors than he offered. (There were some misleading entries in the Debtor's Schedules which may have led the creditors to this conclusion.)

As it turns out, the Debtor is not capable of making more payments to unsecured creditors than he has offered. Indeed, after hearing the Debtor's testimony, counsel for one of the objecting creditors asked Zellmer if he thought he could even make the payments proposed.

I find the Plan was filed in good faith, that all the requirements of Section 1325 are met, and conclude that the Plan should be confirmed.

An Order consistent with this Memorandum Opinion is filed herewith.