**In re Frederick Charles KIBLER and Hedwig Henriette Kibler, Debtors.**

**Bankruptcy No. 80–00525.**

United States Bankruptcy Court, D. Hawaii.

Feb. 11, 1981.

**958**

Raymond S. Bieber, Honolulu, Hawaii, for Kibler.

Ke-Ching Ning, Honolulu, Hawaii, for WEFCU.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

JON J. CHINEN, Bankruptcy Judge.

This matter involves the objection of Whirlpool Employees Federal Credit Union (WEFCU), a secured creditor, to confirmation of the Debtors' Amended Plan under Chapter 13 of the Bankruptcy Code.

The Amended Plan consists of a composition plan whereby the Debtors proposed to pay all secured creditors one-half (50%) of their claims, and to pay unsecured creditors one-fourth (25%) of their claims. At the time their petition was filed, the Debtors owed WEFCU approximately $3,084.94 on the purchase of a 1977 T-Bird automobile. The Debtors contend that the fair value of the T-Bird is only $1,500.00, thus payment of one-half (50%) of WEFCU's claim as secured and one-fourth (25%) of the balance as unsecured meets the requirements of 11 U.S.C. § 1325 of the Code.

On the other hand, WEFCU contends that the value of the T-Bird is $2500.00 and that payment of only one-half (50%) of $3098.74 as a secured claim under the Amended Plan is insufficient.

In addition, WEFCU contends that, if it is to be paid the value of its collateral over a period of time, it should receive interest. The Debtors oppose the award of any interest to WEFCU.

Hearing on the valuation of the automobile was held on January 5 and 8, 1981. Present at the hearing were Ke Ching Ning for WEFCU and Raymond S. Bieber for the Debtors.

Based upon the evidence adduced, the memoranda and the files herein, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Debtors filed their Joint Petition and Chapter 13 Plan on August 22, 1980.

2. Debtors then filed their Amended Plan on September 9, 1980, proposing a composition of 50% to all secured creditors, and 25% to all unsecured creditors.

3. On October 23, 1980, WEFCU filed a claim for $3084.94, plus attorney's fees, and a rejection of the Amended Plan.

4. At the valuation hearings held on January 5 and January 8, 1981, two appraisers testified. Mr. Leroy Chandler, owner of Central Body and Paint Company, testified that he has been in the auto body business since 1960, that he buys and sells second hand cars, and that he does appraisals on ten to fifteen cars a day. Mr. Chandler personally examined the T-Bird on or around December 11, 1980, and he testified that in his opinion the T-Bird was valued at approximately $1600.00 "as is".

5. On the other hand, Mr. Steven Streiter, insurance adjuster for Fireman's Fund Insurance Company, after inspecting the vehicle on or about October 31, 1980, estimated the value to be $2525.00. However, Mr. Streiter did acknowledge that T-Birds were not popular because of their heavy gas consumption.

6. Also at the hearing, counsel for WEFCU requested interest on the amount to be paid by the Debtors over a period of three years. Counsel for Debtors strenuously objected to any interest being paid, asserting that the award of interest was contrary to the spirit of the Bankruptcy Code.

## CONCLUSIONS OF LAW

1. Under the Bankruptcy Code, the debtor in a Chapter 13 proceeding may "cram down" the terms of his plan without the secured creditor's consent under certain conditions.

2. 11 U.S.C. Sec. 1325(a)(5)(B) provides as follows:

(a) The court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(B)(i) the plain provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

3. Thus, under Sec. 1325(a)(5)(B), a debtor may retain the property and pay the creditor the fair value of the property as of the effective date of the plan. The balance of the amount owing is treated as an unsecured claim and paid according to the plan's provisions for general, unsecured creditors.

4. In their Amended Plan, the Debtors proposed to pay only one-half (50%) of the claim of WEFCU, alleging that though the claim is $3084.94, the value of the automobile is only $1500.00. The Debtors thus contend that they are required to pay creditor only $1500.00. Then, by virtue of the "cram down" provision, Debtors contend that they may force WEFCU to accept their amended plan.

5. WEFCU recognizes that Debtors may use the "cram down" provision to force it to accept the Amended Plan over its objection. Thus, a valuation hearing was requested.

6. At the valuation hearing, two appraisers testified. One appraiser valued the automobile as of December 11, 1980, while the other valued the automobile as of October 31, 1980.

■ 7. The date of valuation is important. This Court agrees with the holding in *Virginia National Bank v. Donald Joseph Jones and Mary Francis Jones*, 5 B.R. 736, 6 Bankr.Ct.Dec. 965, 967 (Bkrtcy.Ct. E.D.Va. 1980) that

[v]alue is not to be determined as of the date of filing but on the date proceedings calling for the value of specific collateral are initiated.

This provides the Court with the flexibility implicit in the statute. It also contemplates a valuation as or near the time of the litigation with regard to the property, thus providing the Court with a more complete factual basis to resolve the dispute.

8. In the instant case, the Court finds that October 23, 1980, the date when creditor rejected Debtors' amended plan, and thereby raised the question of the fair value of the T-Bird, is of the date of valuation. The legislative history of the Code indicates that congress intended that the courts have the discretion to determine value on a case by case basis. H.R.Rep.No.595, 95th Cong., 1st Sess. 356 (1977); S.Rep.No.989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

■ 9. Based upon the evidence adduced, the Court finds the 1977 T-Bird to be worth $1900.00 as of October 23, 1980. The Court is influenced by Mr. Streiter's admission that the T-Birds are not popular cars because they are gas guzzlers. The Court also recognizes the time difference between the date of valuation of October 23, 1980 and Mr. Chandler's appraisal of December 11, 1980. The Court adjusts for the time difference between the above two dates and thus arrives at $1900.00.

10. The sum of $1900.00 shall be the secured sum. The creditor shall retain its lien on the 1977 T-Bird until it is paid in full. And the Debtors shall carry full insurance on said automobile as required under the lien contract.

■ 11. The Debtors shall also pay interest as a secured amount until payment is made in full. Section 1325(a)(5)(B) provides that the secured creditor shall receive the value of his collateral as of the effective date of the plan. Since the amended plan provides for payment on an installment basis over a period of three years, the creditor is entitled to interest on the sum of $1,900.00.

12. On this matter of interest, ¶ 1325.-01[ii] of Collier on Bankruptcy states:

[S]ection 1325(a)(5)(B)[ii] cannot be faithfully implemented simply by comparing the sum total of all deferred payments proposed by the plan with the amount of the allowed secured claim. An appropriate discount factor must be arrived at by the court, so as to fairly discount value

proposed to be given in the future on account of the allowed secured claim.

The simplest method of equating the present value of deferred future payments with the amount of the allowed secured claim is to propose interest payments over and above the face amount of the allowed secured claim at whatever interest rate is equivalent to the discount rate selected by the Court or agreed upon by the parties. Accordingly, in addition to deferred principal payments aggregating the face amount of the allowed secured claim, a Chapter 13 plan need only propose to pay interest on the face amount of the allowed secured claim at the appropriate discount rate over the course of the payment extension period. *See also In re Rogers*, 6 B.R. 472, 6 Bankr. Ct.Dec. 1214 (Bkrtcy.S.D.Iowa 1980).

13. Bankruptcy courts have used various rates in deciding the proper interest rate. Some courts have used legal rate, while others have used prime rate, Federal Reserve discount rate, the rate on the contract for purchase of the property, and the three-month Treasury Bill rate.

14. In the instant case, the interest rate agreed to by the parties in the sales contract was set in July of 1978 at 12¼%. The prevailing rate of interest presently charged by credit unions is 15%. This Court find an interest rate between 12¼% and 15% to be reasonable and awards an interest rate of 13¾%.

15. In determining the rate of interest, the Court is not attempting to produce a profit for the creditor, but is only protecting the creditor from loss caused by the installment payments over a period of three years.

IT IS HEREBY ORDERED that unless the Debtors agree to pay WEFCU as above-stated, confirmation of the Amended Plan is Denied.