In the Matter of Kenneth Ray MILLER and Patricia Ann Miller, Debtors.

GENERAL MOTORS ACCEPTANCE CORP., Plaintiff,

v.

Kenneth Ray MILLER and Patricia Ann Miller, Defendants.

Bankruptcy No. 81–0005–EV.
Adv. No. 81–0295.

United States Bankruptcy Court,
S. D. Indiana.

July 23, 1981.

George C. Barnett, Jr., Barnett & Barnett, Evansville, Ind., for General Motors Acceptance Corp.

John J. Jewell, Evansville, Ind., for debtors.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

MICHAEL H. KEARNS, Bankruptcy Judge.

This matter came on for hearing before the court for confirmation of a Chapter 13 Wage Earner Plan and the Rejection of Plan by General Motors Acceptance Corporation therein and upon the Complaint for Relief from Automatic Stay filed by plaintiff. Debtors appeared in person and by John Jewell with the law firm of Trimble, Jewell, White and Wever of Evansville, Indiana. General Motors Acceptance Corp. appeared by counsel George C. Barnett, Jr., with Barnett and Barnett, P.C., of Evansville, Indiana.

The Court having heard the evidence and the arguments thereon, having observed the demeanor of the witnesses and weighed their credibility, and being duly advised in the premises now enters the following Findings of Fact, Conclusions of Law and Order with respect to said claim and objection thereto.

## FINDINGS OF FACT

That on or about July 30, 1979, Kenneth Ray Miller and Patricia Ann Miller, debtors herein, entered into an Installment Sale Contract for the purchase of one (1) 1979 model six (6) cylinder Chevrolet half-ton pickup truck, bearing Identification No. CCD149F441548; that said Chevrolet half-ton truck was fully equipped with automatic transmission, air conditioning, power steering, power brakes, AM/FM radio, along with the deluxe Bonanza and Scottsdale Packages; that under the terms of the Installment Sale Contract dated July 30, 1979, made and entered into by and between debtors as "Buyer" and "Co-Buyer" and Henrickson & Sons Motor Company, Inc., as "Seller", debtors agreed to make payment of the deferred payment price of Nine Thousand Nine Hundred Ninety-one Dollars and Eleven Cents ($9,991.11) financed at an annual percentage rate of 13.51% payable in forty-eight (48) monthly installments of One Hundred Seventy-six Dollars and Five Cents ($178.05) each, commencing September 10, 1979, and on the same day of each successive month thereafter; and that the plaintiff herein is the owner and holder by assignment of the aforesaid Installment Sale Contract.

Plaintiff retained a security interest in said vehicle and its lien is properly perfected by being endorsed as a lien upon the Certificate of Title to said motor vehicle pursuant to IC 1971 26–1–9–302(3)(b).

On or about January 5, 1981, debtors herein filed their Petition for Relief under 11 U.S.C., Chapter 13; that at the time of filing said Chapter 13 Petition, debtors were three (3) payments in arrears under the terms of the original Installment Sale Contract, on their monthly payments due plaintiff in a total amount of Five Hundred Twenty-eight Dollars and Fifteen Cents ($528.15); and that as of June 9, 1981, debtors are eight (8) payments in arrears in the total amount of One Thousand Four Hundred Eight Dollars and Forty Cents ($1,408.40).

That the Court has preliminarily determined that the value of the aforesaid motor vehicle is Four Thousand Nine Hundred Dollars ($4,900.00), and allowed plaintiff's claim as secured in that amount, and debtors by counsel have accepted the Court's valuation as a fair and accurate appraisal.

### ISSUES

1. Does debtors' proposed Chapter 13 Plan satisfy the provisions of 11 U.S.C., Section 1325(a)(5), as required for Confirmation of Debtors' Plan by the Court over this rejecting secured creditor.

2. Is plaintiff entitled to relief from automatic stay under the provisions of 11 U.S.C. § 362(d).

### CONCLUSIONS OF LAW

11 U.S.C. Section 1325(a)(5), provides as follows:

(a) The Court shall confirm a plan if—
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
    (ii) The value, as of the effective date of the plan, of property to be

distributed under the plan on account of such claim was not less than the allowed amount of such claim; or
(C) The debtor surrenders the property securing such claim to such holder;

■ The plaintiff herein as the holder of an allowed secured claim on the aforesaid motor vehicle has rejected debtors' proposed Chapter 13 Plan, and debtors have not surrendered the aforesaid motor vehicle. Therefore, under the provisions of 11 U.S.C., Section 1325(a)(5), to obtain the Court's confirmation of their plan, debtors must qualify their plan under the so-called "cram down" provisions of Section 1325(a)(5)(B). Debtors' proposed plan fails to satisfy either requirement of the "cram down" provisions of Section 1325(a)(5)(B)— both of which are necessary for confirmation herein.

■ Under Section 1325(a)(5)(B)(i) the plan must provide that the plaintiff, GMAC, as a holder of an allowed secured claim retains the lien securing such claim. Debtors' Plan as presently submitted and amended does not so provide.

More importantly, under Section 1325(a)(5)(B)(ii) the value of the property to be distributed under Debtors' Plan on account of plaintiff's allowed secured claim cannot be less than the allowed amount of such claim (Four Thousand Nine Hundred Dollars ($4,900.00), as determined by the Court and agreed to by debtors herein). Debtors' Plan contemplates payments to plaintiff over a three (3) year period in a total amount of Four Thousand Nine Hundred Dollars ($4,900.00), but it makes no provision for the payment of reasonable interest to assure that plaintiff actually obtains the designated value of its collateral— and clearly Four Thousand Nine Hundred Dollars ($4,900.00) paid over time is not equal in value to Four Thousand Nine Hundred Dollars ($4,900.00) "as of the effective date of the plan." As such, the value of the property to be distributed under the plan on account of plaintiff's allowed secured claim is less than the allowed amount of such claim, whereby Debtors' Plan falls short of

the requirement contained in Section 1325(a)(5)(B)(ii).

In *In re Lum*, 1 B.R. 186 (Bkrtcy.E.D. Tenn.1979), the Court addressed the issues raised by Section 1325(a)(5)(B) and held that a Chapter 13 plan must provide a secured creditor with sufficient interest so that payments received over time reflect the present value of the collateral. The Court cited the following language from House Report No. 95–595 discussing similar "cram down" provisions under Chapter 11 of the Code:

> Specifically, the Court may confirm a plan over the objection of a class of secured claims if the members of that class are unimpaired or if they are to receive under the plan property of a value equal to the allowed amount of their secured claims... The property is to be valued as of the effective date of the plan, thus *recognizing the time value of money.* (at page 413, U.S.Code Cong. & Admin.News 1978, pages 5787, 6369). (emphasis added)
>
> Application of the tests under subparagraph (A) also requires a valuation of the consideration "as of the effective date of the plan." *This contemplates a present value analysis that will discount value to be received in the future....* (at page 414, U.S.Code Cong. & Admin.News 1978, page 6370). (emphasis added) 1 B.R. at 188.

In *In re Kibler*, 8 B.R. 957 (Bkrtcy.D.Hawaii 1981), the Court held under a similar Chapter 13 Plan that where the plan provides for payments to be made on an installment basis over a period of three (3) years, the creditor is entitled to reasonable interest on the secured sum. (8 B.R. at 959). The *Kibler* Court cited *Collier on Bankruptcy*, paragraph 1325.01(2) for the following language:

> Section 1325(a)(5)(B)(ii) cannot be faithfully implemented by comparing the sum total of all deferred payments proposed

by the plan with the amount of the allowed secured claim. An appropriate discount factor must be arrived at by the Court, so as to fairly discount value proposed to be given in the future on account of the allowed secured claim. The simplest method of equating the present value of deferred future payments with the amount of the allowed secured claim is to propose interest payments over and above the face amount of the allowed secured claim at whatever interest rate is equivalent to the discount rate selected by the Court or agreed upon by the parties. Accordingly, in addition to deferred principal payments aggregating the face amount of the allowed secured claim, a Chapter 13 plan need only propose to pay interest on the face amount of the allowed secured claim at the appropriate discount rate over the course of the payment extension period.

In determining the interest rate to be applied therein, the *Kibler* Court concluded that an interest rate between the contract rate (12¼%) and the prevailing rate of interest then being charged by credit unions (15%) was reasonable, and applied that rate (13¾%) to payments under the plan. (8 B.R. at 960).

The annual percentage rate under the terms of the original Installment Sale Contract entered into by the debtors herein, is 13.51%. The prevailing rate of interest presently being charged on loans of this nature is, at a minimum, 18%. Applying the Court's reasoning in *In re Kibler, supra,* plaintiff is entitled to a reasonable rate of interest of 15.75% on the value of its collateral.[1]

Section 1325(a)(5)(B) provides that where a creditor does not accept the debtor's proposed plan, he must either be given the value of his collateral or the collateral must be returned. Ignoring the time value of money creates a blatant inequity to the creditor receiving the deferred payments

---

**1.** $4900.00 paid in equal monthly installments over a three year period requires the following monthly payment at the stated annual percentage rates: $166.29 at 13.51% (for total payout of $5,986.44), $171.66 at 15.75% (for total payout of $6,179.76), $177.15 at 18.00% (for total payout of $6,377.40).

under the plan that Congress could not have intended. The "cram down" provisions in the Code were designed to deprive the dissenting creditor of his absolute right to veto debtor's plan where the debtor offered the creditor less than the full amount of his claim. It is illogical to conclude that Congress intended to disparately treat the creditor receiving deferred payments by denying him reasonable interest on the value of his collateral, while apparently rewarding the creditor who obtains the surrender of his collateral by immediately allowing him to utilize and reinvest its cash value.

Under the Debtors' Plan herein, as presently submitted and amended, Debtors' proposed Chapter 13 Plan does not satisfy the provisions of 11 U.S.C., Section 1325(a)(5), and as such, does not qualify for confirmation by the Court, pursuant to 11 U.S.C., Section 1325.

Under 11 U.S.C., Section 362, a debtor filing a Chapter 13 Plan under the Bankruptcy Reform Act of 1978 is protected from creditors by means of the automatic stay provided under Section 362 which prevents creditors, such as the plaintiff herein, from enforcing judgments, collecting a debt, or enforcing a lien which arose prior to the filing of the Chapter 13 Plan. However, Section 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under Subsection (a) of this section; such as by terminating, annulling, modifying or conditioning such stay—

(1) For cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) With respect to a stay of an act against property, if—

(A) The debtor does not have an equity in such property; and

(B) Such property is not necessary to an effective reorganization.

Further provisions relevant to plaintiff's Complaint for Relief from Automatic Stay are found at Section 362(g) which provides:

In any hearing under Subsection (d) or Subsection (e) of this section concerning relief from the stay of any act under Subsection (a) of this section—

(1) The party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) The party opposing such relief has the burden of proof on all other issues.

### 1. 11 U.S.C., Section 362(d)(2)(A)

Under the facts contained herein debtors have no equity in the aforesaid Chevrolet half-ton truck for the reason that the present outstanding balance due plaintiff under the terms of the aforesaid Installment Sale Contract is Six Thousand Three Hundred Thirty-seven Dollars and Eighty Cents ($6,337.80), and debtors agree with plaintiff that the value of the said Chevrolet half-ton truck is less than that amount. Where both plaintiff and debtors admit lack of equity, the plaintiff as the party requesting relief under Section 362(d) has adequately met its burden of proof on the issue of the debtors' equity in the aforesaid half-ton truck, and has satisfied its resultant burden of persuasion on that issue.

### 2. 11 U.S.C., Section 362(d)(2)(B)

Debtors, as the party opposing plaintiff's Complaint for Relief from Automatic Stay, have failed to satisfy their burden of proof on the issue of whether the aforesaid Chevrolet half-ton truck is necessary to an effective reorganization, as provided by Section 362(g)(2), supra. Debtors have offered no probative evidence tending to support the position that the aforesaid Chevrolet half-ton truck is somehow necessary to an effective reorganization, or more specifically, necessary to carry out the Chapter 13 Plan proposed by Debtors' Petition.

The facts reveal that debtors have access to other means of transportation including the use and ownership of at least one other motor vehicle. The particular one-half ton Chevrolet pickup truck which is the subject of these proceedings is not necessary or required for either of debtors' employment,

nor is it necessary or important that debtors retain possession of this one-half ton pickup truck to carry out the provisions of their Chapter 13 Plan.

This Court notes that until recently its personal and periodic business transportation needs were served by use and ownership of a 1964 Chrysler automobile, which car, although the source of an occasional aside, was nevertheless adequate in accomplishing the Court's needs. All citizens in today's economic climate, including Debtors in the instant case, might be well advised to reconsider and evaluate their transportation needs, and arrive at more prudent and pragmatic judgments.

3. *Applicability of 11 U.S.C., Section 362(d)(2) to Chapter 13*

■ Shortly after the enactment of the Bankruptcy Reform Act of 1978, a few Courts in interpreting the provisions contained in Section 362(d)(2) determined that the language of Section 362(d)(2)(B) was not applicable to Chapter 13 proceedings.

In *In re Feimster*, 6 B.C.D. 131, 3 B.R. 11 (Bkrtcy.N.D.Ga.1979), the Court recognized that Section 362(d)(1) and 362(d)(2) offered alternative means for obtaining relief from the automatic stay provided by Section 362(a) and further noted that to obtain relief under Section 362(d)(2), both the conditions contained in Section 362(d)(2)(A) and 362(d)(2)(B) must be found to be present. (3 B.R. at 13). However, the *Feimster* Court held that Section 362(d)(2) was not applicable to Chapter 13 proceedings, basing its determination on the fact that the word "reorganization" contained in Section 362(d)(2)(B) "is a term nowhere else appearing in the Bankruptcy Code except in Chapter 11." (3 B.R. at 14).

The Court then looked to Congress' intent in drafting Section 362(d)(2)(B) and noted:

If Congress, in drafting Section 362(d)(2)(B), had intended to make said subsection applicable to debtors other than a debtor in Chapter 11 reorganization, Congress could easily have added the phrase "an adjustment of debts of an individual with regular income." Or, Congress could have stricken the word "reorganization" and inserted "rehabilitations under Chapter 11 and 13," or something like: "Chapter 11 Reorganization or Chapter 13 Adjustment of Debts." (3 B.R. at 14).

Approximately one year later *In Re Ruark*, 7 B.R. 46 (Bkrtcy.D.Conn.1980) reexamined Section 362(d) of the Bankruptcy Code and the reasoning contained in *In Re Feimster, supra*, and determined that the interpretation provided therein was inaccurate. Like *Feimster, Ruark* held that Section 362(d)(1) of the Bankruptcy Code provides one method of obtaining relief from the automatic stay and that Section 362(d)(2) provides an independent and alternative method for obtaining relief. (7 B.R. at 47). However, the *Ruark* Court found Section 362(d)(2) to be applicable in Chapter 13 proceedings.

The *Ruark* Court found no generally accepted standards for applying Section 362(d), and pointed out that except for *Feimster* the Courts had usually considered both clauses of Section 362(d) to be applicable without distinguishing between them. (7 B.R. at 48). The Court rejected the conclusion reached in *Feimster* that the term "reorganization" applied only to Chapter 11 proceedings and not to Chapter 13. The Court noted that *Collier on Bankruptcy* in its discussion of Section 362(d) assumed that Section 362(d) applied in Chapter 13 cases. (2 *Collier on Bankruptcy* (15th Ed.) in paragraph 362.07(2) at 362.48). As an indicator of Congressional intent the Court pointed out in a footnote that the proposed Technical Amendments Bill (Senate Bill S.658) would insert after the word "reorganization" the phrase "in a case under Chapter 11 of this title or to an effective plan in a case under Chapter 13 of this title, as the case may be made."[2]

---

2. See also Bankruptcy Service—L.Ed.Sup. § 81:6 which indicates that the 96th Congress failed to enact S.658 or any other technical amendments bill primarily because of the differences between the House and Senate concerning Bankruptcy Judges' retirement bene-

The Court in *In Re Zellmer*, 6 B.R. 497 (Bkrtcy., N.D.Ill.1980) examined the applicability of Sections 361 and 362 to Chapter 13 proceedings. In quoting from an earlier decision in which it had discussed the question of whether the term "reorganization" limited the scope of Section 362(d) to Chapter 11 proceedings only, the Court stated that "there is no specific exclusion of Sections 361 and 362 from Chapter 13 proceedings, and the general rule is that Chapter 3 of the Code applies to Chapter 13 proceedings.[3] The Court concludes, therefore, that Sections 361 and 362 apply to Chapter 13 proceedings." (6 B.R. at 499).

The Court discussed *In Re Feimster, supra,* and held:

> While I applaud Judge Norton's reasoning (in *In Re Feimster*), I am again compelled to the conclusion that Section 362 in its entirety is applicable to Chapter 13 proceedings. Congress, in spite of its ill-advised use of the word "reorganization", can hardly have intended that part of the 362(d) should apply to Chapter 13 proceedings, and part of it not apply. (6 B.R. at 500).

Similar reasoning in *In Re Brock*, 6 B.C.D. 1065, 6 B.R. 105 (Bkrtcy.N.D.Ill. 1980), and in *In Re Pittman*, 8 B.R. 299 (D.C., D.Colo.1981) led to the conclusion that Section 362(d)(2) was applicable under Chapter 13. The clear trend and only reasonable conclusion is that Section 362(d) in its entirety applies to Chapter 13 Plans and provides the method by which the Court shall determine whether relief from the automatic stay provided by Section 362(a) shall be granted.

### 4. *Relief from Stay under Section 362(d)(2)*

■ In *In Re Ruark, supra*, the Court discussed the issue of whether Section 362(d)(1) and 362(d)(2) were to be read in conjunction or whether each in fact provided an alternative basis for relief. The Court noted that Congress provided "true alternatives, and .... there is no necessity for a bankruptcy court to find that the conditions stated in both 1 and 2 are present in order to grant relief from stays." (7 B.R. at 48). In support of its position the Court found "that the legislators employed the disjunctive *or* as a connective linking paragraphs 1 and 2 and eschewed the conjunctive *and*." (7 B.R. at 48). In a footnote the Court pointed out that while the Rules of Construction found at Section 102(5) provide, " 'or' is not exclusive," the legislative history states that the purpose of the rule is to allow a party to do either or both where "or" is used in the Code and "the party is not limited to a mutually exclusive choice between the two alternatives." (7 B.R. at 48, footnote 2. citing the House and Senate Reports in U.S.Code Congressional Administrative News).

The *Ruark* Court cites further language contained in the House and Senate Joint Statement which indicates that Section 362(d)(1) and 362(d)(2) provide alternative methods for granting relief from automatic stay:

> .... under Section 362(d)(1) of the House Amendment, the Court may terminate, annul, modify, or condition the automatic stay for cause, including lack of adequate protection of an interest in property of a secured party. Under Section 362(d)(2) the Court may alternatively terminate, annul, modify, or condition the automatic stay for cause including inadequate protection for the creditor. The Court shall grant relief from the stay if there is no equity and it is not necessary to an effective reorganization of the debtor. 124 Cong.Rec. H11092–3 (Sept. 28, 1978); S 17409 (Oct. 6, 1978).

In *In Re Jones*, 7 B.R. 141 (Bkrtcy.E.D. Pa.1980), a case similar to the case presently at bar, Chrysler Credit Corporation, holder of the security interest in the debtor's automobile, filed its complaint seeking re-

---

fits. It is expected that another Technical Amendments Bill will be pushed in the current session of Congress.

**3.** See 11 U.S.C. § 103(a): "Except as provided in Section 1161 of this title, Chapters 1, 3 and 5 of this title apply in a case under Chapter 7, 11 or 13 of this title."

lief from the automatic stay entered in debtor's Chapter 13 proceeding. The Court held that the creditor was entitled to relief from the automatic stay pursuant to Section 362(d)(2) having shown that the debtor lacked equity in the subject property and in the absence of a showing that such property is necessary to an effective reorganization. (7 B.R. at 143). The Court's opinion contained no discussion of Section 362(d)(1) and thus based relief entirely on Section 362(d)(2).

Under the authorities cited, Section 362(d)(1) and Section 362(d)(2) each provide an alternative basis for obtaining relief from the automatic stay imposed by 11 U.S.C., Section 362. Plaintiff, without further proof, is entitled to relief from the stay, herein, under the provisions set out at Section 362(d)(2).

### 5. *11 U.S.C., Section 362(d)(1)*

Debtors have further failed to sustain their burden of proof in demonstrating that plaintiff's collateral has been and will continue to be adequately protected as required by Sections 362(d)(1) and (g)(2). Plaintiff's collateral is a 1979 model pickup truck and as such is subject to rapid and continuing depreciation even when used with great care. Debtors are presently eight (8) payments in arrears under the terms of the original Installment Sale Contract in the total amount of One Thousand Four Hundred Eight Dollars and Forty Cents ($1,408.40) and have not made a payment on the aforesaid motor vehicle since the payment due under the terms of the original Installment Sale Contract on September 10, 1980.

At the time debtors purchased the aforesaid motor vehicle, the vehicle was new and had a cash price including accessories, services and taxes imposed on the cash sale of Seven Thousand Five Hundred Seventy-nine Dollars and Seventy-one Cents ($7,579.71). The deferred payment price under debtors' agreement was Nine Thousand Nine Hundred Ninety-one Dollars and Eleven Cents ($9,991.11). At the time debtors filed their Chapter 13 Petition herein,

on or about January 5, 1981, the value of the aforesaid motor vehicle as determined by the Court and agreed upon by debtors herein was Four Thousand Nine Hundred Dollars ($4,900.00). Over a seventeen (17) month period from the time debtors purchased said automobile until the time debtors filed their Petition herein said motor vehicle depreciated Two Thousand Six Hundred Seventy-nine Dollars and Seventy-one Cents ($2,679.71) or an average of One Hundred Fifty-seven Dollars and Sixty-three Cents ($157.63) depreciation per month.

Nine months have passed since debtors last made a scheduled payment, during which time depreciation based on the average monthly depreciation amount of One Hundred Fifty-seven Dollars and Sixty-three Cents ($157.63) totals One Thousand Four Hundred Eighteen Dollars and Sixty-seven Cents ($1,418.67). Debtors have not offered nor does their plan contemplate adequate protection of plaintiff's interest therein. In fact it is basically this amount which debtors characterize as "unsecured" under their Chapter 13 Plan.

As the Court pointed out in a footnote in *In Re Lum, supra:*

11 U.S.C., § 363 provides that a party with an interest in property of the estate to be used, sold, or leased by the trustee can demand adequate protection of its interest. The court thinks that a secured creditor may demand that a chapter 13 plan adequately protect it. See 11 U.S.C. § 1303.

If the collateral depreciates faster than the payments the secured creditor becomes less secured. Payments at least equal to depreciation prevent that. (1 B.R. at 187, footnote 1).

Debtors contemplated payments do not equal average depreciation nor can they compensate plaintiff for the depreciation which has occurred and is continually occurring under their Chapter 13 Plan. Furthermore, N.A.D.A. "Blue Book" values fail to take into account personal usage, misuse and abuse by individual owners and in that regard depreciation probably exceeds the amount calculated herein.

Having offered nothing more than the monthly payments to begin at their plan's confirmation, debtors have failed to adequately protect plaintiff's interest in their collateral, the aforesaid motor vehicle.

## SUMMARY

Under the terms of 11 U.S.C., Section 1325(a)(5), where the holder of allowed secured claim rejects a debtor's Chapter 13 Plan and the debtor does not surrender the property securing such holder's claim, then the Plan must provide that the holder of the secured claim retain his lien, and the value of the property to be distributed under the plan to such holder may not be less than the allowed amount of such holder's claim. Debtors' Plan herein does not provide that the plaintiff as holder of an allowed secured claim retain its lien, nor does it provide plaintiff the value of its collateral as contemplated under Section 1325(a)(5)(B)(ii).

While Debtors' Plan appears to offer plaintiff value in that it promises to pay up to Four Thousand Nine Hundred Dollars ($4,900.00) to plaintiff over a three year period, it nonetheless fails to take into consideration necessary interest payments to assure that plaintiff actually receives the value of its collateral when paid over time. As such Debtors' Plan fails to satisfy the requirements for confirmation contained in Section 1325.

Under the terms of 11 U.S.C., Section 362(d), relief from the automatic stay granted under Subsection (a) of Section 362 shall be granted by the Court with respect to a stay of an act against property if the debtor does not have an equity in such property and such property is not necessary to an effective reorganization. Section 362(g) provides that the plaintiff has the burden of proof on the issue of debtors' equity in property and the debtors as the party opposing such relief have the burden of proof on all other issues. Here the plaintiff has sustained its burden of proof on the issue of debtors' equity in the aforesaid Chevrolet half-ton truck, and the debtors have failed to sustain their burden of proof

in establishing that the aforesaid Chevrolet half-ton pickup truck is necessary to an effective reorganization. On that basis and without further proof, plaintiff is entitled to relief from the automatic stay provided under Section 362 of the Code.

Section 362(d) provides another means by which relief from stay may be granted. Under the terms of Section 362(d)(1) relief may be granted for cause including the lack of adequate protection. Here plaintiff's collateral, a 1979 Chevrolet half-ton pickup truck, is subject to rapid and continuing depreciation. Throughout the course of these proceedings, debtors have not offered nor does their plan contemplate offering plaintiff adequate protection for its depreciating collateral. Debtors are presently eight (8) payments in arrears and offer nothing more than the scheduled monthly payments under their plan which plan fails to provide the value contemplated in Section 1325(a)(5)(B)(ii).

The Court deems the preliminary hearing of June 4, 1981 consolidated with the final hearing in this matter and that plaintiff is entitled to all proper relief to which it would be entitled to a final hearing, including an order for surrender of possession of its collateral.

## ORDER

It is therefore CONSIDERED, ADJUDGED AND DECREED:

1. That confirmation of debtors' Chapter 13 Plan is DENIED on the basis of the rejection by GMAC.

2. That debtors are granted ten (10) days within which to dismiss their Chapter 13 proceedings or file an amended plan.

3. That the automatic stay provisions of 11 U.S.C. § 362 are terminated with respect to this creditor.

4. That plaintiff is entitled to the possession of one (1) 1979 Chevrolet half-ton pickup truck, I.D. No. CCD149F441548 in the possession of debtors and to dispose of said collateral pursuant to its security agreement and that debtors are ordered to surrender said vehicle forthwith.