**In re Richard Gray ANDERSON, Debtor.**

**Bankruptcy No. C–2–82–219.**

United States District Court,
S.D. Ohio, E.D.

Sept. 30, 1982.

Lita C. (Sager) Miller, John J. Dilenschneider, Porter, Wright, Morris & Arthur, Columbus, Ohio, for The First-Knox Nat. Bank of Mount Vernon and Farmers Production Credit Ass'n.

David E. Railsback, Zelkowitz, Barry & Cullers, Mount Vernon, Ohio, for The First-Knox Nat. Bank of Mount Vernon.

Kenneth J. Nordstrom, Nordstrom & Locke, Ashland, Ohio, for Farmers Production Credit Ass'n.

William M. Lane, Lane, Alton & Horst, Columbus, Ohio, for Federal Land Bank of Louisville.

Pamela N. Maggied, Lee C. Mittman Co., L.P.A., Columbus, Ohio, for debtor, Richard Gray Anderson.

Frank Pees, Chapter 13 trustee, Worthington, Ohio.

## OPINION AND ORDER

DUNCAN, District Judge.

This matter is before the Court on appeal from a decision of the bankruptcy court, 18 B.R. 763, confirming the debtor-appellee's Chapter 13 plan for voluntary repayment of his creditors. Appellants, the holders of various mortgages on the debtor's property, contend *inter alia* that the plan is flawed because it is patently infeasible, and because the 8% rate of interest proposed for deferred payments is much too low. Upon review of the decision of the bankruptcy judge below, as well as the briefs of the parties and the proposed plan itself, the Court has determined that these objections must be overruled.

I

Anderson, the debtor in this action, owns approximately 290 acres of land in Knox County, Ohio. The bankruptcy judge found this property to have a present value of between $290,000 and $348,000. A house on the parcel is worth an additional $50,000. Appellants, The Farmers Production Credit Association of Ashland (FPCA), The Federal Land Bank of Louisville (Land Bank), and First-Knox National Bank of Mount Vernon (First-Knox), each hold mortgages on this property. According to the bankruptcy judge, the total amount due to appellants under these mortgages was $222,-659.54 as of the time of confirmation.

Anderson's proposed plan calls first for the satisfaction of unsecured creditors through a series of monthly and semi-annual payments to the Chapter 13 trustee. This portion of the plan is expected to take 25 months to complete, and it is not seriously at issue here. The second part of the plan consists of a proposal to sell 225 acres of the above-mentioned property at $1,000 per acre. From the funds generated by this sale, Anderson expects to pay each of the claims of the mortgage holders in full. The plan appears to envision immediate marketing and sale of the property, but in order to guarantee the mortgage holders the full present value of their claims, an interest factor of 8% *per annum* from the time of confirmation is to be paid on all proceeds.

Over appellants' objections, the bankruptcy court gave its qualified approval to the plan. Judge Sidman noted that a delay in the proposed land sale could extend the time needed for completion of the plan to as much as 60 months, and he observed further that the success of the plan "is contingent upon a sale of real estate under market conditions which, in recent months, are far from ideal." See Order on Objections to Confirmation at 3. Notwithstanding these caveats, he determined that the plan met each of the six requirements for confirmation set forth in 11 U.S.C. § 1325(a). Anderson's proposal was thus confirmed, although Judge Sidman indicated his inten-

tion to monitor the continued feasibility of the plan by requiring Anderson to make progress reports to the trustee concerning the sale of the 225 acres. In addition, appellants were given the option of raising their objections anew "at any other point in this case that circumstances may dictate." *Id.* at 4.

## II

### A

Section 1325(a) of the Bankruptcy Code, 11 U.S.C. § 1325(a) sets forth six distinct prerequisites for approval of a Chapter 13 plan:

> The court shall confirm a plan if—
>
> (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
>
> (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law;
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
>
> (5) with respect to each allowed secured claim provided for by the plan—
>
> (A) the holder of such claim has accepted the plan;
>
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
>
> (C) the debtor surrenders the property securing such claim to such holder; and
>
> (6) the debtor will be able to make all payments under the plan and to comply with the plan.

Appellants contend that the plan should not have been approved because it does not meet several of these prerequisites. They argue first that the plan violates subsection (a)(6) because the proposed sale will not generate sufficient funds to satisfy their claims plus accrued interest if the sale does not take place within a few months of confirmation. In light of current market conditions, they maintain, an immediate liquidation of the property at issue is highly unlikely.

■ This objection is not totally without merit. Subsection (a)(6) precludes approval of a voluntary repayment plan unless the court has first determined that the plan as a whole is feasible. *See In re Penland,* 11 B.R. 522, 524 (Bkrtcy.N.D.Ga.1981), *In re Fluharty,* 7 B.R. 677 (Bkrtcy.N.D.Ohio, 1980). As the bankruptcy court below pointed out, this does not mean that a plan cannot be approved unless the court is absolutely certain that all payments will be made under it. It does mean, however, that a reviewing court should confirm a plan only if it appears under all the circumstances that the plan has a reasonable likelihood of success. *Id.*

Here the success of Anderson's plan is far from certain. Although the proposed sale price of $225,000 appears adequate to cover the total amount due appellants as of the date of confirmation, thus satisfying the requirements of subsection (a)(5)(B)(ii), the amount necessary to pay those creditors in full increases at a rate of 8% *per annum* during the period in which the land is still on the market. Anderson's own calculations show that if the land is not sold for a year, the total debt plus accrued interest would come to $240,471.97, well above the amount that presumably would be realized from the sale. Appellee Anderson's brief at 4. If the land is not sold for two years after confirmation, this amount would increase to $259,709.72. *Id.* Anderson has indicated his willingness to sell some of the remaining acreage should the proceeds of the original sale be insufficient to satisfy the mortgage holders in full, but it is clear

that the feasibility of the plan as currently constituted depends in large part on the odds of a relatively quick sale. Given the sluggishness of the real estate market recently, it is not difficult to fathom appellants' skepticism about the plan's ultimate success.

■ The Court cannot conclude that the bankruptcy judge erred in confirming the plan, however. As is immediately evident from the bankruptcy court's order, the judge was well aware of the latent deficiencies in the proposal, as well as the practical barriers to its success. After having an opportunity thoroughly to review the specifics of Anderson's plan and the objections thereto, Judge Sidman determined that the plan's probability of success was high enough to meet the threshold of feasibility imposed by subsection (a)(6). The Court does not believe this finding is clearly erroneous. The bankruptcy judge also gave appellants the opportunity to force modification of the plan if and when it becomes apparent that accrued interest has caused the total debt outstanding to exceed the funds which will be generated by the proposed sale. In the Court's view, this aspect of the confirmation order gives appellants an ample safeguard against the risk of failure inherent in Anderson's plan. The Court therefore rejects appellants' claim of error under § 1325(a)(6).

### B

Appellants' second main objection is that the plan does not fairly compensate them for their loss of the use of the money owed them by Anderson. They contend that the 8% "discount rate" proposed in the plan is wholly inconsistent with the interest rate to which they are entitled under 11 U.S.C. § 506(b). They urge the Court to recognize a "contract rate" rule which would require Anderson to pay interest on the outstanding debt at the rate specified in each of the respective mortgages.

■ There is little question that appellants are entitled interest. Section 506(b) provides that where a creditor's claim "is secured by property the value of which . . .

is greater than the amount of such claim," the debtor must pay "interest on [the] claim, and any reasonable fees, costs or charges provided under the agreement under which such claim arose." This statute is incorporated by reference into Section 1325(a)(1), so the bankruptcy court may not confirm a plan which fails to provide interest for eligible creditors. Since the value of Anderson's 290 acres exceeds the aggregate amount of appellants' mortgage claims, each of the creditors is "oversecured" for purposes of § 506(b) and is thus entitled to interest on deferred payments under the plan.

Neither of the abovementioned statutes specifies an appropriate interest rate, however, and the bankruptcy courts are in disagreement as to what this rate should be. Some courts have taken the view that interest should be paid at the current prime rate. *See Matter of Cooper,* 7 B.R. 537 (Bkrtcy.N. D.Ga.1980). Others have found the rate specified in the underlying debt instrument to be proper. See *In re Jones,* 5 B.R. 736 (Bkrtcy.E.D.Va.1980). Still others have opted for an amalgam of methods. *See Matter of Miller,* 13 B.R. 110 (Bkrtcy.S.D. Ind.1981); and *In re Zeigler,* 6 B.R. 3 (Bkrtcy.S.D.Ohio 1980).

■ In this district the leading case appears to be *In re Marx,* 11 B.R. 819 (Bkrtcy. S.D.Ohio 1981). There the court analogized the interest provision of § 506(b) to 11 U.S.C. § 726(a)(5) and concluded that the proper rate of interest to be paid on post-confirmation arrearages is the legal rate fixed by state law. The court reasoned that to the extent a Chapter 13 plan envisions deferred payments,

the "equities" demand that the debtor pay interest at *the legal rate.* This affords the debtor the full benefit of the use of § 1322(b)(5), without the burden of a continuing interest rate calculation which can only further impair his back-pay ability, while at the same time adequately compensating the creditor, on a fair and equitable basis, for the delay in the curing of the default. This result

promotes debtor rehabilitation while also protecting creditor rights. It is also a result which comports with the statutory mandate of § 1325(a)(5)(B)(ii) of the Bankruptcy Code which deals with the treatment of allowed secured claims in a Chapter 13 case.

*Id.,* 11 B.R. at 822. The court noted additionally that fixing interest payments at the rate specified by state law leads to consistency in the treatment of creditors regardless of widely varying pre-petition contract rates, thus reducing the costs of administering a Chapter 13 plan.

This Court finds the rationale offered by *In re Marx* highly persuasive. Without compelling legislative or judicial authority to the contrary, the Court must respectfully decline appellants' invitation to overturn it. *Accord, In re Freeman,* No. C–2–80–766 (S.D.Ohio Nov. 24, 1981) (Memorandum and Order *per* Holschuh, J.). The Court is aware that a rule setting interest at the legal rate may in some instances allow a debtor to avoid paying substantially higher rates which are specified by the underlying debt instrument, and that such a rule presents some opportunity for abuse by debtors. The good faith requirement of § 1325(a)(3), coupled with the continued willingness of the bankruptcy courts to enforce this requirement, should protect Chapter 13 creditors adequately, however. The Court thus concludes that there was no error in confirming a plan which specified interest on deferred payments at 8%, the rate currently prescribed by Ohio law. See R.C. 1343.03.

Appellants have also raised a number of other alleged errors under § 1325(a) and related provisions of the Bankruptcy Code. The Court has reviewed these objections at length and finds them to be not well taken.

For the reasons stated above, the Court concludes that the bankruptcy court did not violate § 1325(a) or otherwise err in confirming the Chapter 13 plan proposed by appellee Anderson. The ruling of that court is therefore AFFIRMED.